**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luis RUIGOMEZ, Defendant-Appellant.**

**No. 77–5391.**

United States Court of Appeals,
Fifth Circuit.

July 21, 1978.

Daniel V. Alfaro, Albert R. Huerta, Juan P. Gonzalez, Corpus Christi, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., James R. Gough, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Robert A. Berg, Asst. U. S. Atty., Corpus Christi, Tex., for plaintiff-appellee.

Before MORGAN and GEE, Circuit Judges, and KING,* District Judge.

---

\* Of the Southern District of Florida, sitting by designation.

1. Both indictments allege that the conspiracies existed "within the five years last past" and took place in the Southern District of Texas. The 1975 indictment further states that the

GEE, Circuit Judge:

In October of 1975, Luis Ruigomez, Jr. was indicted for several violations of federal narcotics laws, including one charge of conspiracy to possess marijuana with intent to distribute. In 1976, following his trial and acquittal on these charges, the government secured a second indictment against him on an identical conspiracy count, supported by facts similar to those alleged in the previous indictment, and on an additional count of conspiring to distribute marijuana. At his second trial Ruigomez was convicted on the former count, and he now appeals that conviction as the product of double jeopardy, claiming that the government impermissibly carved two conspiracies out of one. *See United States v. Moore*, 522 F.2d 1068, 1078 (9th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976); *United States v. O'Dell*, 462 F.2d 224, 226–27 n.2 (6th Cir. 1972); *Dryden v. United States*, 403 F.2d 1008, 1009 (5th Cir. 1968).

The 1976 indictment alleged that in February or March of 1974,[1] Fred Brulloths sold large quantities of marijuana to appellant and Alberto Lopez, Jr. in separate transactions, the marijuana having been bought from Reynaldo Alvarez and stored in a warehouse rented jointly by Brulloths and Ruigomez. The relevant count of the 1975 indictment had implicated appellant in two drug deals. The first, which allegedly took place in July and August of 1974, involved an agreement between Brulloths and Kenneth Burnstine by which the latter was to fly a shipment of marijuana from the interior of Mexico to the northern part of that country, where the contraband would be picked up for transportation across the border. In connection with this scheme, appellant allegedly delivered to Brulloths a suitcase of money earmarked as Burnstine's payment. The second transac-

conspiracy alleged therein continued to "on or about September 8, 1974." Thus, the conspiracies appear to overlap, although there is a four-month interval between the last overt act set out in the 1976 indictment and the first overt act in the 1975 indictment.

tion set forth in the 1975 indictment allegedly occurred in August and September of 1974, when Burnstine again agreed to pilot a plane loaded with marijuana, this time the flight's destination being Fredericksburg, Texas. According to the indictment, Ruigomez was present when Burnstine received his pay and also allowed one of the other co-conspirators to use his car during negotiations.

The government argues that differing overt acts were alleged in the indictments,[2] urging us to resolve the double jeopardy question by means of the "same offense" test, which focuses upon the similarity or dissimilarity of the evidence adduced in the multiple prosecutions. *See United States v. Papa*, 533 F.2d 815, 820 (2d Cir.), *cert. denied*, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976); *United States v. Mallah*, 503 F.2d 971, 985 (2d Cir. 1974), *cert. denied*, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975); *United States v. McCall*, 489 F.2d 359, 362–63 (2d Cir. 1973), *cert. denied*, 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974); *Dryden v. United States*, 403 F.2d at 1009. We decline to apply that test in cases such as this one, however, because it would permit the government arbitrarily to split unitary narcotics conspiracies and to initiate as many prosecutions. *See United States v. Papa*, 533 F.2d at 820; *United States v. Mallah*, 503 F.2d at 985; *United States v. Young*, 503 F.2d 1072, 1075 (3d Cir. 1974); *United States v. McCall*, 489 F.2d at 362–63. We think the relevant question is, instead, whether the particular transactions alleged in the indictments were within a larger, unified conspiracy.

Conspiracies to traffic in drugs are ordinarily of the continuing sort: once the parties have agreed to the criminal enterprise, the day-to-day operations of buying, transporting, and selling are handled without the necessity of renewing the underlying con-

sensual arrangement. *See United States v. Gonzalez*, 491 F.2d 1202, 1206 (5th Cir. 1974). There is considerable evidence in this case that Brulloths, Ruigomez, and others were involved in a single, continuing conspiracy to purchase and distribute marijuana. Most of this evidence comes from Brulloths himself, who was convicted under the 1975 indictment and was an unindicted co-conspirator under the 1976 indictment, having turned state's witness. At the double jeopardy hearing below, and at the trial itself, Brulloths testified to the following facts: that during 1973 and 1974 he and Ruigomez rented a warehouse in Corpus Christi, Texas, which warehouse served as a distribution point in the drug smuggling operation; that Olvido Ortiz, who was convicted under the earlier indictment and was an unindicted co-conspirator under the later one, regularly purchased marijuana from a Mexican source and transported the contraband to the warehouse in Corpus Christi; that Brulloths would always call the same people whenever a shipment arrived, telling them simply, "It's here"; that Ruigomez always got first option on the marijuana, followed by Lopez, Oscar Del Barrio, and Ortiz, in that order; that Brulloths would meet with his regular buyers at least twice a week and called them with offers to sell on the average of twice each month during 1973 and 1974; that an average of 10,000 pounds of marijuana was shipped each month during that same period; and that there was no break in these operations between the times of the overt acts alleged in each indictment. These foregoing facts satisfy the usual tests for determining the existence of a unified conspiracy—the participants shared a continuing, common goal of buying and selling marijuana for profit; the operations of the conspiracy followed an unbroken and repetitive pattern; and the cast of conspirators remained much the same. *See United States v. Becker*, 569 F.2d 951, 960 (5th Cir. 1978).

2. The 1975 indictment implicated Ruigomez more with the smuggling end of the conspiracy, while the 1976 indictment presents him as a buyer. Of course, appellant could constitutionally have been charged with conspiracy to import, as well as with conspiracy to possess with intent to distribute; in fact, the first indictment did additionally accuse Ruigomez of conspiring to import marijuana, of actual importation, and of attempting to import. What appellant complains of here is having been twice indicted and tried for conspiracy to possess with intent to distribute, which is essentially the offense of being a dealer.

The government contends that the sales covered in the indictments were extraordinary and not part of the continuing conspiracy: that in the Burnstine transactions a different mode of transportation was used—a plane instead of a motor vehicle—and the contraband was not stored in the usual cache, while in the Alvarez sale the shipment was unexpected and Brulloths bought the marijuana with his own money. These facts, of course, go to the importation phase of the conspiracy and not to the distribution activities for which Ruigomez was twice tried. Conceivably there could be such a drastic change in the supply method that Brulloths and his buyers would consider it necessary to cut a new deal, or even that his regular buyers would decide to withdraw. But a change in the means of transportation, in the storage place of the contraband, or even in the identity of the original supplier does not constitute such a material alteration of the agreed-upon scheme, at least not in the circumstances of this case nor on the evidence presented.

Accordingly, we find that Ruigomez was twice indicted for the same conspiracy to possess marijuana with intent to distribute and, therefore, reverse his conviction as being the product of an unconstitutional imposition of double jeopardy.

REVERSED.