**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jonathan GARRETT and Christopher Garrett, Defendants-Appellants.**

No. 81–6205.

United States Court of Appeals,
Eleventh Circuit.

March 2, 1984.

Philip A. DeMassa, San Diego, Cal., for Jonathan Garrett.

Roy E. Black, Guy W. Turner, Miami, Fla., for Christopher Garrett.

Thomas T. Dillard, U.S. Atty., Dana D. Biehl and Ronald LeGrand, Mervyn Hamburg, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before FAY and KRAVITCH, Circuit Judges, and ATKINS *, District Judge.

KRAVITCH, Circuit Judge:

For the purpose of clarification, the panel vacates its opinion in *United States v. Jonathan Garrett and Christopher Garrett,* No. 81–6205, slip op. at 1352 (11th Cir. Jan. 23, 1984), and substitutes the following in its stead:

Appellants, Jonathan Garrett and Christopher Garrett, were convicted of violating the federal narcotics laws in connection with a large drug importation and distribution scheme. They were sentenced to pris-

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

on terms and fined. In addition, the district court entered an order forfeiting Jonathan Garrett's yacht. In this appeal, Jonathan Garrett asserts (1) that the district court's disqualification of retained counsel violated his right to the counsel of his choice; (2) that his prosecution for engaging in a continuing criminal enterprise was barred by the Double Jeopardy Clause; (3) that the court erred in denying his motion for a bill of particulars; (4) that the court's restricting the cross-examination of a government witness violated his right of confrontation; and (5) that his right to a jury trial on the forfeiture issue was not properly waived. Christopher Garrett argues (1) that the admission of a non-testifying codefendant's confessions deprived him of his right of confrontation and (2) that his joint trial with a defendant against whom the bulk of the evidence was offered did not satisfy the constitutional requirement of a fair trial. We remand for further proceedings with respect to the forfeiture order and affirm in all other respects.

## I. BACKGROUND

Between 1976 and 1981, Jonathan Garrett and his brother, Christopher, were involved in an extensive marijuana importation and distribution operation. Directed primarily by Jonathan, this scheme entailed off-loading, transport and storage, as well as meetings and telephone calls, in several states, including Arkansas, Florida, Georgia, Louisiana, Massachusetts, Michigan, Texas and Washington.

In March 1981, Jonathan Garrett was charged in Washington with importing marijuana, aiding and abetting the possession of marijuana with intent to distribute, and traveling in interstate commerce for the purpose of facilitating the importation of marijuana. He pleaded guilty to the importation charge and was sentenced to five years imprisonment and fined $15,000. In July 1981, appellants and four others were indicted in Florida for violating the Travel Act, 18 U.S.C. § 1952, and various sections of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 801 *et seq.*

When Jonathan Garrett was arraigned in August 1981, the government moved the district court to disqualify the attorney whom he had hired, one Marger, stating that the attorney was a target of the investigation and had been identified as a participant in the scheme, and suggesting that he was a potential defendant and a potential witness. Marger denied any impropriety, attempted to explain why the allegations were false and requested a hearing. The court nevertheless granted the government's motion. Having appointed another attorney to represent Garrett, the court denied subsequent motions to allow Marger to serve as counsel.

In September 1981, Jonathan Garrett filed a motion to dismiss on double jeopardy grounds, asserting that his conviction in Washington on a marijuana importation charge barred prosecution on a continuing criminal enterprise charge which encompassed, *inter alia,* the Washington importation operation. He also filed a motion for a bill of particulars, requesting that the government provide the details of each incident relied upon to establish "a continuing series of violations" in connection with the continuing criminal enterprise charge. Both motions were denied as was Christopher Garrett's motion for severance. Appellants and their codefendants were tried jointly by a jury.

Jonathan Garrett was convicted of conspiracy to import marijuana (21 U.S.C. §§ 952, 960, 963) (Count I), conspiracy to possess marijuana with intent to distribute (21 U.S.C. §§ 841, 846) (Count II), use of telephone to facilitate illicit drug activity (21 U.S.C. §§ 963, 846, 843(b)) (Count VII), and engaging in a continuing criminal enterprise (21 U.S.C. § 848) (Count XI); he was acquitted on another telephone misuse charge (Count VIII). Christopher Garrett was convicted of conspiracy to possess with intent to distribute (Count II), but was acquitted on the conspiracy to import charge (Count I) and on a telephone misuse charge (Count VI). On Counts I, II and VII, Jonathan was sentenced to consecutive prison terms totaling fourteen years and was fined

$45,000. With regard to Count XI, he was sentenced to forty years imprisonment, to run concurrently with the other prison terms, and was fined $100,000. Christopher was sentenced to five years imprisonment and was fined $15,000.

Finally, the district court ordered that Jonathan Garrett's interest in a yacht, the *Sun Chaser III,* be forfeited. Count XI of the indictment, charging Garrett with engaging in a continuing criminal enterprise, had alleged that as a result of such activity, he had derived substantial resources subject to forfeiture, including the *Sun Chaser III.* During a conference conducted in chambers by the court with counsel, Garrett's attorney had stated that he had no objection to the forfeiture issue being resolved by the judge after the jury returned a verdict on the issue of guilt. After trial, the court determined that forfeiture was warranted notwithstanding evidence indicating that others also had an interest in the vessel.

## II. JONATHAN GARRETT'S CLAIMS

### A. Disqualification of Counsel

Jonathan Garrett asserts that the disqualification of Marger, whom he had retained as counsel, violated his Sixth Amendment right to counsel. Specifically, he claims that he had an absolute right to the counsel of his choice irrespective of any potential infirmities.[1] This case, however, falls squarely within our decision in *United States v. Hobson,* 672 F.2d 825 (11th Cir.), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982), in which we stated, "[t]he right to counsel of choice is not absolute ... and must give way where its vindication would create a serious risk of undermining public confidence in the integrity of our legal system." *Id.* at 828. In *Hobson,*

the defendant was charged with violating the federal narcotics laws. Relying upon the affidavits of two witnesses implicating one of the defendant's attorneys in the criminal operation, the district court entered a disqualification order. In so doing, the court concluded that evidence of the attorney's involvement might be offered and, if so, would possibly create the appearance of impropriety on the attorney's part and would bring before the jury an issue of the attorney's credibility which would operate to the defendant's detriment. On appeal, the court applied the two-pronged test for disqualification of an attorney under Canon 9 of Florida's Code of Professional Responsibility:

> First, although there need not be proof of actual wrongdoing, "there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." Second, "a court must also find that the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case." "Under Canon 9, an attorney should be disqualified only when both of these standards have been satisfied."

*Id.* (citations omitted) (quoting *Woods v. Covington County Bank,* 537 F.2d 804, 813 (5th Cir.1976)). Concluding that the district court's findings of fact were not clearly erroneous and that the court properly applied the relevant ethical standards, the court affirmed the order disqualifying retained counsel.[2]

█ In this case, the two-pronged test was also satisfied. First, the prosecutor informed the district court that the government expected to show "positive potential

---

1. At the trial level, Garrett objected to the disqualification, but did not specifically argue that the right to counsel of choice is absolute. In response to the government's motion for disqualification, Marger denied involvement in the drug scheme and sought to explain the allegations against him. And in moving to allow Marger to represent Garrett, appointed counsel attempted to prove that the potential problem of Marger's being called as a defense witness would be obviated by the stipulation of all defense counsel. Garrett argues for the first

time on appeal that he had the right to choose Marger as his counsel regardless of the accusations against him and his potential status as a defendant or witness.

2. Although the opinion in *Hobson* was not unanimous, *see* 672 F.2d at 829 (Kravitch, Circuit Judge, concurring in part and dissenting in part), we are, of course, bound by this precedent.

testimony against Mr. Marger," and testimony at trial described "specifically identifiable impropriety" on Marger's part and established a "reasonable possibility" that the impropriety occurred. In particular, Norman Vick, a participant in the drug operation, testified that Marger recovered Garrett's purchase money after an aborted attempt to buy a 70-foot shrimp trawler for smuggling purposes. Vick and another participant in the drug operation, Joel Knowles, testified that Marger was involved in an aborted effort to steal a 160-foot oil field supply boat again for smuggling purposes. Knowles also testified that he used Marger's office to contact Garrett in connection with the operation. Although these allegations may be false, this evidence no doubt would have raised the possibility of misconduct in the jurors' minds.

With respect to the second prong of the test, we conclude that the likelihood of public suspicion outweighed the social interests in Marger's continued representation of Garrett. Although Marger's familiarity with Garrett's situation was valuable, he was not irreplaceable. Moreover, the testimony of Vick and Knowles portrayed Garrett's attorney as having engaged in unlawful activities and thus would have undermined his credibility before the jury. Because this testimony was not inherently or facially incredible, Marger's continued representation of Garrett probably would have resulted in the erosion of public confidence in the integrity of the bar and of the legal system. We therefore hold that the district court's disqualification of retained counsel did not violate Garrett's rights under the Sixth Amendment.

Our closing remarks in *Hobson* are equally appropriate in this case:

We are aware that [the defendant] has indicated that he would be willing to waive any ethical problems in order to have the benefit of his attorney's continued representation in this case. The defendant is not free to waive the problem

presented here, however, because the [alleged] ethical violation involves public perception of the lawyer and the legal system rather than some difficulty in the attorney's effective representation of [the defendant].

672 F.2d at 829.

While we hold that Garrett's rights were not violated, we are disturbed by the district court's failure to conduct a hearing or require affidavits confirming that accusations against Garrett's attorney would likely be elicited at trial, or that the attorney was a probable defendant or witness. Such steps would have made it clear in advance of the disqualification at trial that there was a reasonable possibility that impropriety did occur and that the likelihood of public suspicion outweighed the social interests in continued representation. Accordingly, this procedure would remove what might be viewed as prosecutorial discretion from the disqualification determination, would eliminate the incentive for the government to offer evidence at trial against a non-defendant attorney, and would avoid reversal on appeal on Sixth Amendment grounds where the evidence at trial fails to support the disqualification. That notwithstanding, we uphold the disqualification in this case since the evidence adduced at trial plainly satisfied the two-pronged test.[3]

### B. Double Jeopardy

Invoking the Double Jeopardy Clause, Garrett contends that his conviction in Washington for importing marijuana barred the subsequent prosecution in Florida for engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. Relying on the former Fifth Circuit's decision in *United States v. Phillips,* 664 F.2d 971 (5th Cir. Unit B 1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d

---

**3.** Before the trial court and on appeal, Marger and Garrett have intimated that *Marger* was entitled to a hearing prior to disqualification. Insofar as Marger is not a party to this appeal

and there is no indication that Garrett has standing to assert Marger's rights, we decline to address the issue.

166 (1982), we hold that Garrett's prosecution in Florida under section 848 after his conviction in Washington for importation did not violate the guarantee against double jeopardy.

The appellant in *Phillips* claimed that his conviction for aiding and abetting the importation of marijuana precluded a later prosecution for engaging in a continuing criminal enterprise encompassing the same activity. Citing *United States v. Ruigomez,* 576 F.2d 1149 (5th Cir.1978), he argued that the aiding and abetting offense was a transaction within a larger unified conspiracy, the continuing criminal enterprise, and that the government was barred from proceeding with multiple prosecutions, even for substantive offenses, if there was a unified conspiracy. Noting that *Ruigomez* merely prohibits the government from carving up a single conspiracy into multiple conspiracy prosecutions, the court stated:

> [The defendant] asserts that in the situation in which a defendant is charged under § 848, the perpetration of constituent substantive offenses is "part and parcel" of the large conspiracy-type offense. Indeed, this is true. Underlying violations are the very matters that trigger the applicability of § 848. *Jeffers v. United States, supra,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 [ (1977) ], does not support [the defendant's] claim that a prior substantive narcotics charge which is committed in the operation of a continuing criminal enterprise precludes a later § 848 prosecution. *Jeffers* indicates that a prosecution for conspiracy to distribute narcotics in violation of 21 U.S.C. § 846 is a lesser included offense of § 848 because § 848 requires proof of an agreement

among the persons participating in the continuing criminal enterprise and thus requires proof of every fact necessary to show a violation under § 848 as well as proof of several additional elements. *Jeffers* does not stand for the proposition that a prior prosecution for a *substantive* offense bars a later continuing criminal enterprise prosecution under § 848.

664 F.2d at 1009 (emphasis in original).

Although the *Phillips* court focused largely on the concept of a unified conspiracy, the case is most fairly read as holding that a substantive predicate offense under Title 21 does not constitute a lesser-included offense of § 848 and thus double jeopardy does not attach to the underlying offense so as to bar a subsequent § 848 prosecution. In rejecting the appellant's claim, the court essentially held that the substantive constituent offense and the continuing criminal enterprise, even if parts of a single large conspiracy, were distinct for double jeopardy purposes.[4] Because the present case is indistinguishable from *Phillips,* we conclude that Garrett's successive conviction for marijuana importation and prosecution under § 848 comported with the requirements of the Double Jeopardy Clause. *See also United States v. Smith,* 690 F.2d 748, 750 (9th Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983) (reversing conspiracy conviction as lesser-included offense of § 848, but affirming without discussion conviction on substantive counts); *United States v. Johnson,* 575 F.2d 1347, 1354 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979) (same); *cf. United States v. Barnes,* 604 F.2d 121, 155–56 (2nd Cir.1979), *cert.*

---

**4.** It is arguable that *Phillips could* have been decided on the ground that because the jury found several other offenses which could have been used as predicates for the § 848 conviction, the aiding and abetting offense was not *necessarily* used as a predicate offense and therefore could not be regarded as a lesser-included offense of § 848. After reexamining the opinion, however, we conclude that *Phillips* was not in fact decided on this more narrow ground. There is certainly no language in the opinion clearly stating that a conviction for a substantive offense takes on double jeopardy implications when used to establish the continuing criminal enterprise in a subsequent § 848 prosecution. Moreover, even if the *Phillips* court did adopt this alternative holding, our disposition of Garrett's double jeopardy claim would be the same. To the extent that Garrett was convicted of three Title 21 violations which could have served as constituent offenses, the government did not necessarily rely on the Washington importation and thus Garrett's conviction and sentence under § 848 should not be disturbed. In any event, we express no opinion on the correctness of this approach.

*denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980) (affirming additional sentence for substantive violations imposed on defendant given maximum sentence for § 848 conviction).[5]

### C. Denial of Bill of Particulars

Garrett argues that the district court erred in denying the motion for a bill of particulars in which he requested the government to "[s]tate specifically what violations are referred to, and their dates and participants, for each incident relied upon to prove 'a continuing series of violations'" with respect to Count XI. In its response to Garrett's motion, the government asserted that "[t]he indictment in this case is a thorough and complete statement of the charges against the Defendant" and that together with other government submissions, the indictment "sufficiently apprises the Defendant of the charges against him to allow him to prepare his defense...." On appeal, the government points out that the discovery documents produced at trial provided Garrett with adequate notice of the incidents relied upon to prove the continuing criminal enterprise charge and that Garrett was at no time unable to cross-examine a government witness because of unfamiliarity with the circumstances elicited on direct examination.

■ The standard of review with respect to a motion for a bill of particulars was articulated in *United States v. Colson,* 662 F.2d 1389 (11th Cir.1981). There this court stated:

> The purpose of a bill of particulars is to inform the defendant of the charge in sufficient detail to enable adequate de-

fense preparation and to minimize surprise at trial. Grant or denial of such a motion lies within the sound discretion of the trial court and may be challenged only for abuse of that discretion. Proof of abuse requires a showing of actual surprise at trial and prejudice to the defendant's substantial rights by the denial.

*Id.* at 1391 (citations omitted). We note that Garrett offers only the general assertion that he was not given adequate notice of the predicate offenses and that he fails to specify any evidence adduced by the government with which he was not already acquainted. Insofar as Garrett makes no "showing of actual surprise at trial and prejudice," we find no abuse of discretion in the denial of Garrett's motion for a bill of particulars.

### D. Restriction of Cross-Examination

Garrett claims that in restricting defense counsel's cross-examination of Thomas Ruth, a participant in the drug operation, the district court deprived him of his Sixth Amendment right to confront the witnesses against him. After testifying for the government, Ruth was subjected to extensive cross-examination by defense lawyers. He testified that he had been arrested while trying to sell marijuana in an unrelated incident; that he had been told by law enforcement officers that he might receive a prison term of at least five years; that upon receipt of immunity from prosecution, he had cooperated by detailing his participation in drug smuggling activities; that he had subsequently received funds from the government; and that he had testified for the government in an unrelated case. He also stated on cross-examination that he

---

**5.** We realize that there is not unanimity among the circuits on this issue. *See United States v. Samuelson,* 697 F.2d 255, 260 (8th Cir.1983) (because substantive offenses actually relied on in establishing a continuing criminal enterprise may be considered lesser-included offenses of § 848, double jeopardy bars conviction and sentence on both substantive and continuing criminal enterprises charges); *United States v. Middleton,* 673 F.2d 31, 33 (1st Cir.1982) (same); *cf. United States v. Gomberg,* 715 F.2d 843, 851 (3d Cir.1983) (double jeopardy bars cumulative sentences for substantive predicate

offense and continuing criminal enterprise); *United States v. Jefferson,* 714 F.2d 689, 703 (7th Cir.1983) (same). Because we are bound by the *Phillips* decision, *see Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), however, we have not independently compared the elements of the offenses, *see Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), or inquired into legislative intent, *see Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535, 542 (1983); *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981).

had once overseen an off-loading operation. At that point, defense counsel sought to ask whether Ruth had been advised by the government that because of his supervisory role, he could be charged with engaging in a continuing criminal enterprise.

At the bench conference following the government's objection, defense counsel said that he intended to show that Ruth's motive for cooperating with the government was to avoid being sentenced to a minimum of ten years and a maximum of life under section 848. Counsel for the government responded that the jury should not be made aware of the range of sentences which could be imposed if the defendant were convicted. In open court, the district judge asked Ruth, "[h]as anybody with the government ever advised you of the possibility or that you could be indicted for what is known as a continuing criminal enterprise?" Ruth replied, "[n]o, sir." As the cross-examination continued, Ruth related that he had never discussed with his attorney the types of federal crimes for which he could have been prosecuted absent the grant of immunity and that he had not been advised of the possibility of the government's securing forfeiture of his property.

In *United States v. Tolliver*, 665 F.2d 1005 (11th Cir.), *cert. denied*, 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982), this court stated:

> The extent of cross-examination with respect to an appropriate subject of inquiry is generally within the sound discretion of the trial court, and the trial court's decision will not be disturbed on review unless an abuse of discretion is present. There is, however, a sphere which a trial judge may not impinge, for the "discretionary authority to limit cross-examination comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfied the Sixth Amendment."

*Id.* at 1008 (citations omitted); *see also United States v. Sonntag*, 684 F.2d 781, 788 (11th Cir.1981) ("as long as the limitation [of cross-examination] does not interfere with the defendant's right of confrontation, this ruling is also discretionary with the trial court."); *United States v. Varella*, 692 F.2d 1352, 1355 (11th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 3542, 77 L.Ed.2d 1392 (1983) (right to confront "is not unlimited, and the extent of cross-examination is committed to the sound discretion of the trial court"). We recognize that where a prosecution witness has been threatened with a criminal charge or actually charged with a criminal offense, the defendant is entitled to explore those circumstances on cross-examination in order to bring to the jury's attention the witness' possible motive or self-interest with respect to the testimony given. *See Greene v. Wainwright*, 634 F.2d 272, 274 (5th Cir.1981). In this case, however, we conclude that the district court's limited interference with the cross-examination of Ruth constituted neither an infringement of Garrett's confrontation right nor an abuse of the court's discretion.

The scope of the cross-examination allowed with respect to Ruth was quite broad. Defense lawyers were permitted to inquire into the circumstances of his arrest, the fact that he struck a deal with the government whereby he would cooperate in exchange for immunity from a crime carrying a five-year minimum prison term, his status as a paid government witness, and the extent of his understanding of the various crimes with which he could have been charged. Indeed, the trial judge ruled out but a single line of questioning, and did so only after ascertaining that the witness had no knowledge of the subject. Both the judge's colloquy with the witness and defense counsel's subsequent cross-examination confirm that there was no basis in fact for the proposed line of questioning. Although the judge's questioning could have been more thorough, the record supports his implicit finding that further interrogation regarding a possible continuing criminal enterprise charge would not have exposed a source of bias on the witness' part. We therefore conclude that Garrett was afforded sufficient cross-examination to satisfy the Sixth Amendment.

We note also that pursuit of the proposed line of questioning would have revealed to the jury the severity of the sentence to which Garrett, if convicted, would have been subjected. Because such information would have been extrinsic and prejudicial, the trial court was certainly justified in preventing defense counsel from eliciting it. Hence we conclude that the court acted well within the exercise of its discretion in restricting the cross-examination of Ruth.

### E. Improper Waiver of Jury Right

██ Jonathan Garrett's final objection is that his Sixth Amendment right to a trial by jury at the forfeiture stage was not properly waived inasmuch as there was only an oral waiver by counsel, not a written waiver by Garrett himself. First, we must determine whether there is a right to a trial by jury at the forfeiture stage of a proceeding under section 848 and, if so, whether a defendant's waiver of that right must be in writing. A forfeiture pursuant to the provisions of section 848 is plainly a criminal, as opposed to civil, matter. As the Third Circuit has observed:

> Unlike the traditional *in rem* forfeiture proceeding against contraband or articles put to use in criminal activities, *see, e.g.,* 21 U.S.C. § 881 (1976), criminal forfeiture proceedings of Sections 848(a)(2) are *in personam.* *Cf.* 18 U.S.C. § 1963 (1976) (the *in personam* criminal forfeiture provisions of RICO).

*United States v. Long,* 654 F.2d 911, 914 (3d Cir.1981). It follows that under the Sixth Amendment, a criminal defendant is entitled to a jury trial on the issue whether a particular asset is forfeitable. Accordingly, Rule 31 of the Federal Rules of Criminal Procedure provides, "[i]f the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any." Fed.R.Crim.P. 31(e).

██ It is equally evident that waiver of a defendant's jury right in a section 848 for-feiture proceeding must be in writing. Rule 23 of the Federal Rules of Criminal Procedure explicitly states, "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." Fed.R. Crim.P. 23(a). We see no reason to hold this rule inapplicable to those stages of a section 848 proceeding which follow a guilty verdict.[6]

██ Next, we must determine whether Garrett has made out a valid claim of improper waiver. We begin with the observation that the purpose of Rule 23(a) is to ensure that a criminal defendant is aware of his jury right before waiving it and that any waiver is personal and unequivocal. In order to maintain its effectiveness in protecting the underlying constitutional guarantee, we require strict compliance with the rule. Thus reversal is warranted where there is no written waiver signed by the defendant in the record and the defendant asserts either that he was unaware of his jury right or that he did not consent to its waiver.

██ This is not to say that the court will invariably grant relief for purely technical violations of the rule, as where a defendant knowingly acquiesced in a waiver which was never reduced to writing. If the defendant admits, or the government plainly demonstrates, that at the time of the waiver the defendant was not ignorant of his jury right and consented to the waiver, reversal would not be in order, for the defendant cannot complain on appeal of an alleged error invited or induced by himself. *See United States v. Page,* 661 F.2d 1080, 1082–83 (5th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 136 (1982).

██ It is unclear from Garrett's appellate briefs whether he presents us with a

---

**6.** Thus we reject the government's distinction between the trial on the issue of guilt and subsequent determinations, and the govern-ment's characterization of forfeiture as "essentially a matter of punishment" indistinguishable from ordinary sentencing.

purely technical claim.[7] Moreover, the record is silent as to whether Garrett was in fact cognizant of his jury right and agreed to counsel's oral waiver, hence inviting error by remaining silent.[8] We therefore remand to the district court for an evidentiary hearing on this issue. Unless the government succeeds in proving Garrett's knowledge and consent, express or implied, Garrett must be afforded a new trial, before a jury, on the forfeiture issue; only if the augmented record firmly establishes Garrett's knowledge and consent will the forfeiture order stand.

■ In concluding, we note:

that it would have been better to do as the rule directs and that much could be said for enforcing it strictly as to such an entire waiver of jury trial. The right involved is a precious one; and a mechanical application of the express, bright-line provision of Rule 23(a) safeguarding it would not be wholly amiss: no written waiver signed by the defendant, no bench trial.

*Page,* 661 F.2d at 1081 (footnote omitted). Although we recognize the invited error exception introduced in *Page* and, in this case, remand for an evidentiary hearing, we emphasize that the exception is a narrow one and that under Rule 23(a) the primary responsibility for protecting the right to trial by jury rests on trial judges and prosecutors. Having explicitly held that the Sixth Amendment and Rule 23(a) apply to forfeiture proceedings under section 848, we will uphold a bench trial on the forfeiture issue conducted without a signed waiver only in an extraordinary case such as *Page.*

## III. CHRISTOPHER GARRETT'S CLAIMS

### A. *Bruton* Violation

■ Christopher Garrett argues that admission of the incriminating confession of a non-testifying codefendant, Jonathan Garrett, abridged his Sixth Amendment right of cross-examination. In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that where there is a substantial risk that the jury, despite instructions to the contrary, will look to the incriminating extrajudicial statements of one codefendant in determining the guilt of another codefendant, admission of the former's confession in a joint trial violates the latter's confrontation right. Subsequent decisions establish that in order to invoke the *Bruton* doctrine, the confession in question must directly, rather than indirectly, implicate the complaining defendant. *See United States v. Castro,* 596 F.2d 674, 676 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979); *United States v. Stewart,* 579 F.2d 356, 359 (5th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 332, 58 L.Ed.2d 332 (1978); *United States v. Hicks,* 524 F.2d 1001, 1003 (5th Cir.1975), *cert. denied,* 424 U.S. 956, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976).

In this case, government witnesses related out-of-court statements in which Jonathan Garrett, who did not take the stand, referred to "underlings" and "charges" in connection with his drug smuggling scheme. These isolated references to anonymous subordinates by no means directly implicated Christopher Garrett. Given the extensiveness of the activities to which Jonathan confessed, it was obvious, without his say-

---

**7.** In his main brief, Garrett does not assert that he was denied the right to a jury trial; rather, he urges reversal on the ground that the record contains "neither a written waiver by appellant nor any indication that he was ever made aware of his rights to a jury trial on the forfeiture issue, let alone waived said right." In his reply brief, however, Garrett states that "his attorney in a chambers conference, which appellant neither attended nor was he aware of, waived jury on the forfeiture. Thus, appellee is incorrect when it claims that all the 'relevant parties' agreed to the jury waiver. Appellant did not . . . . The bottom line is that Garrett was denied his constitutional as well as statutory right to a jury determination of the forfeiture issue as to the *Sun Chaser III.*"

**8.** The silence of the record may be attributed in large part to Garrett's failure to challenge the jury right waiver in his motion for a new trial or otherwise to bring this issue to the trial judge's attention.

ing so, that others were involved. In confirming that he received the assistance of others, however, he did not provide the slightest hint as to their particular identities. Here, unlike in *Serio v. United States,* 401 F.2d 989 (D.C.Cir.1968), which Christopher cites in support of his claim, there was not "the well-nigh inevitable association of [the defendant] as the 'other man' referred to in [his codefendant's] confession." *Id.* at 990.

 In view of the non-inculpatory nature of the confession, as well as the cautionary instruction given by the trial court, we conclude that there was no substantial risk that the jury looked to Jonathan's confession as bearing on Christopher's guilt. We therefore hold that admission of the confession did not infringe Christopher Garrett's rights under the Confrontation Clause.

### B. Transference of Guilt

 Finally, Christopher Garrett asserts that the trial court's instructions were insufficient to prevent the jury from confusing him with his brother and that severance was required to prevent the prejudicial effect of the charges and evidence against his brother from "spilling over" onto him. We conclude that the safeguards employed or available adequately dealt with any potential confusion and that the district court did not abuse its discretion in refusing to sever appellants' trials.

The dangers of confusion and "spillover" were directly addressed by the trial court's specific instruction that "[e]ach offense and the evidence pertaining to it should be considered separately. Also, the case of each Defendant should be considered separately and individually." In addition, the availability of cross-examination provided defense counsel with the opportunity to dispel any confusion occasioned by the vague or erroneous testimony of prosecution witnesses. As for the possibility that the jury was influenced by the abundant evidence against Jonathan in passing on Christopher's guilt, the numerous questions posed by the jury to the court during delibera-

tions and the fact that the jury acquitted Christopher on all but one count (of which the evidence of guilt was compelling) indicate that the jury carefully considered the evidence supporting each charge against each of the defendants. *See United States v. Phillips,* 664 F.2d 971, 1017 (5th Cir. Unit B 1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *United States v. Hawkins,* 661 F.2d 436, 453 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2274, 73 L.Ed.2d 1287, 457 U.S. 1137, 102 S.Ct. 2967, 73 L.Ed.2d 1355, 459 U.S. 832, 103 S.Ct. 72, 74 L.Ed.2d 71 (1982); *United States v. Zicree,* 605 F.2d 1381, 1389 (5th Cir.1979), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980); *Tillman v. United States,* 406 F.2d 930, 936 (5th Cir.), *vacated in part on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969).

As the former Fifth Circuit pointed out in *Phillips:*

> Denial of a motion for severance is reversible only for an abuse of discretion and a showing of compelling prejudice must be made before a trial court's ruling will constitute an abuse of discretion . . . . The remedy of severance is justified only if the prejudice flowing from a joint trial is clearly beyond the curative powers of a cautionary instruction.

664 F.2d at 1016–17 (citations omitted). This court has repeatedly stated that "[i]n order to demonstrate an abuse of discretion, the defendant must establish that the joint trial subjected him not just to some prejudice, but to compelling prejudice against which the district court could not afford protection." *United States v. Harper,* 680 F.2d 731, 733 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 229, 74 L.Ed.2d 182 (1982); *see also United States v. Kabbaby,* 672 F.2d 857, 861 (11th Cir.1982) ("defendant bears a heavy burden in demonstrating clear and compelling prejudice"); *United States v. Tombrello,* 666 F.2d 485, 492 (11th Cir.), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982) ("defendant . . . must demonstrate compelling prejudice

against which the trial court will be unable to afford protection").

We conclude that in this case the jury could "collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct," *Phillips,* 664 F.2d at 1017, and that the problem of the jury's confounding the two Garretts was minimized. Since Christopher Garrett is unable to demonstrate compelling prejudice, we hold that the denial of his motion for severance did not render his trial unfair and was not an abuse of discretion.

AFFIRMED in part and REMANDED in part.