[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14530
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 10, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:09-cr-00261-MMH-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY WILLIAM DENHAM,
a.k.a. Tony,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 10, 2011)

Before EDMONDSON, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

After a jury trial, Anthony William Denham appeals his convictions for inducing a minor to engage in sexually explicit conduct for the purpose of producing child pornography and knowingly receiving child pornography by cellular telephone. On appeal, Denham argues that the district court committed reversible error when it: (1) denied his motion for a mistrial after the government's cooperating witness told the jury Denham was in jail, and (2) limited Denham's cross-examination of that witness as to her bias and motive for testifying. After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Offense Conduct

Federal Bureau of Investigation ("FBI") agents received a complaint from Elizabeth Heffner that her boyfriend used social networking web sites to meet a fifteen-year-old female, S.A., and then traded S.A. prepaid cell phone minutes for nude pictures of S.A. During an investigation, FBI agents found five pictures of S.A. either nude or partially nude and displaying her genitals on Denham's cell phone.

In an interview with FBI agents, S.A. explained that Denham befriended her on the Internet. Denham eventually asked S.A. to take the pictures of herself using her cell phone camera and then send them to his cell phone. S.A. said she

sent Denham about thirty pictures of herself. In exchange, Denham sent her a cell phone card.

Unbeknownst to S.A., Denham used S.A.'s pictures to create a profile on a social networking site. The web page invited men to send either prepaid phone minutes or checks or money orders in exchange for sexually explicit pictures of S.A. Denham also entered chat rooms pretending to be S.A. and offered to send sexually explicit photographs in exchange for cell phone minutes or money orders.

A federal grand jury returned a superseding indictment charging Denham with inducing a minor to engage in sexually explicit conduct for the purpose of producing child pornography, in violation of 18 U.S.C. § 2251(a) and (e) ("Count One"); knowingly receiving child pornography by cellular telephone, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) ("Count Two"); and knowingly possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) ("Count Three").

**B.    Pre-trial Motion in Limine**

Prior to trial, Denham made an oral motion in limine to prohibit any reference to his being detained or jailed during the investigation or criminal proceedings. The government did not oppose Denham's motion and suggested redacting any mention of Denham's incarceration in the trial exhibits. The

3

government also noted that it had instructed its cooperating witness, Elizabeth Heffner, not to refer to the fact that Denham was in jail. The district court granted Denham's motion in limine.

## C.      Motion for a Mistrial

During trial, at the prosecution's request, the district court instructed witness Heffner that she could not tell the jury that Denham was in jail. Heffner responded that she understood. On direct examination, Heffner explained that (1) Denham was her boyfriend and the father of her child; (2) Denham obtained pornographic photographs from underage girls whom he met online; and (3) Denham, by pretending to be an underage girl, induced men to send him money orders and cellular telephone cards in exchange for those pornographic photographs. Heffner admitted participating in Denham's "scam" by helping him obtain money orders and knowing that the scam was illegal and involved underage girls.

When the prosecutor asked Heffner why she had reported Denham to the FBI, Heffner's response mentioned that Denham had been in jail, as follows:

> Q:     Okay. And why did you - - why'd you call the FBI?
> A:     I was mad at Anthony.
> Q:     When you say you were mad at him, can you tell us why you were mad at him?
> A:     Because we broke up and he went to jail and - -

4

Denham objected and moved for a mistrial. Following a recess, the district court denied Denham's mistrial motion, explaining that the "fleeting reference" to jail had no detail or further discussion, was not intentionally elicited and was not "likely to influence the outcome of the trial." The district court gave a curative instruction directing the jury to disregard Heffner's answer to the prosecutor's last question. The prosecutor then asked Heffner why she was mad at Denham, and Heffner explained that it was because they broke up.

Heffner also admitted that she did not want to testify against Denham and that she was doing so only because she was subpoenaed. Although Heffner denied being made any promises in exchange for her testimony, she hoped that she would not be prosecuted.

## D.    Cross-Examination of Heffner

On cross-examination, Heffner denied that she was trying to help the government in order to avoid prosecution. This exchange occurred:

> Q:    Okay. You don't want them to prosecute you on this, right?
> A:    I would - - no, because of my daughter.
> Q:    Okay. Because if they prosecuted you on this, you know that you're facing a lengthy prison sentence, right?
> A:    Yes.
> Q:    If they prosecuted you with the charges that they're prosecuting Mr. Denham with and you got convicted of enticing or coercing a minor in engaging in sexually explicit conduct - -

5

The government objected. At a side bar conference, defense counsel admitted that she planned to elicit from Heffner the specific penalties Heffner faced if she was prosecuted on the counts charged against Denham and argued that this information was relevant to Heffner's motive for testifying.

The district court sustained the government's objection. The district court ruled that defense counsel could question Heffner about whether she could face "a substantial prison term" or even "many years of imprisonment," but that it was not appropriate to advise the jury of the specific penalties. The district court explained that the jury was not "equipped to understand, for example, that those type sentences ordinarily don't run consecutively" and the information would confuse the jury. The district court concluded that "any probative value of advising them of the specific terms of imprisonment is outweighed by the confusion and prejudice."

Defense counsel continued cross-examining Heffner, as follows:

Q: Ms. Heffner, you understand that you can be prosecuted in this case, correct?
A: Yes.
Q: Okay. And so knowing that, you are trying to do your best not to get prosecuted, correct?
A: Yes.
Q: And you have been trying to cooperate with [the prosecutor] and [FBI] Agent Pruitt.
A: Yes.
Q: And you've had lots of conversations with Agent Pruitt.
A: Yes.

. . . .

Q:      Okay.  And there have been times that you did not want to cooperate with them, right?
A:      Yes.
Q:      And when you didn't want to cooperate with them, they reminded you that you could be prosecuted for this, right?
A:      Yes.
Q:      And that made you start cooperating again, correct?
A:      Yes.
Q:      And if you do get prosecuted for this, you're facing many years in prison, correct?
A:      Yes.

Following the trial, the jury returned a guilty verdict against Denham on all three counts.  Count Three subsequently was dismissed based on the government's motion.  The district court sentenced Denham to 240 months' imprisonment on Count One, and 120 months' imprisonment on Count 2, to run concurrently.  Denham filed this appeal challenging his convictions, but not his sentences.[1]

## II.  DISCUSSION

### A.  Motion for a Mistrial

On appeal, Denham argues that the district court abused its discretion by denying his motion for a mistrial.  Denham argues that Heffner's jail comment denied him a fair trial and a presumption of innocence.

---

[1]In part because Denham had a criminal history of Category IV, his advisory guidelines range was 324 to 405 months' imprisonment.  The district court imposed a sentence below that range.

"A mistrial should be granted if the defendant's substantial rights are prejudicially affected," which occurs "when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different." United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007). This determination is made "in the context of the entire trial and in light of any curative instruction." Id. Because the district court "is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury," we review the denial of a mistrial motion for an abuse of discretion. United States v. Emmanuel, 565 F.3d 1324, 1334 (11th Cir. ), cert denied, 130 S. Ct. 1032 (2009) (quotation marks omitted). "When a district court gives a curative instruction, the reviewing court will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." Newsome, 475 F.3d at 1227 (brackets and quotation marks omitted).

"The mere utterance of the word jail, prison or arrest does not, without regard to context or circumstances, constitute reversible error per se." Emmanuel, 565 F.3d at 1334 (affirming denial of mistrial motion where police officer witness mentioned he would see defendant when the defendant would sign in "as a condition of bail"); see also United States v. Veteto, 701 F.2d 136, 139-40 (11th Cir. 1983) (affirming denial of mistrial motion where witness stated that defendant had been in prison before). The denial of a mistrial is proper "where the comment

8

is brief, unelicited, and unresponsive, adding nothing to the government's case." Emmanuel, 565 F.3d at 1334.

Here, we cannot say the district court abused its discretion in denying Denham's motion for a mistrial. As the district court noted, witness Heffner uttered a single, brief comment about Denham's being in jail without any further elaboration. Heffner's comment was not responsive to the prosecutor's question and did not add to the government's case. The government took steps prior to Heffner's testimony to avoid any mention of Denham's being in jail and did not elicit the comment intentionally. Nor should the prosecutor have anticipated the comment given that Heffner did not mention Denham's incarceration when previously answering a similar question before the grand jury. Finally, the district court gave the jury a curative instruction, and Denham has not shown that the brief, unelicited reference to jail was so highly prejudicial that the jury could not follow that curative instruction.

**B.  Cross-Examination of Heffner**

Denham argues that the district court violated his Sixth Amendment rights to confrontation and to present a defense when it limited his ability to cross-examine Heffner effectively about her bias and motive to lie.[2]

"The Confrontation Clause guarantees criminal defendants an opportunity to impeach through cross-examination the testimony of witnesses for the prosecution." United States v. Baptista-Rodriguez, 17 F.3d 1354, 1370 (11th Cir. 1994). "A limitation on cross-examination can violate the Sixth Amendment right to confrontation if it prevents the defendant from showing that a witness is biased." De Lisi v. Crosby, 402 F.3d 1294, 1300 (11th Cir. 2005). The need for full cross-examination is particularly important "where the witness is the star government witness or participated in the crimes for which the defendant is being prosecuted." United States v. Williams, 526 F.3d 1312, 1319 (11th Cir. 2008). Also, "where a prosecution witness has been threatened with a criminal charge or actually charged with a criminal offense, the defendant is entitled to explore those circumstances on cross-examination in order to bring to the jury's attention the witness' possible motive or self-interest with respect to the testimony given." United States v. Garrett, 727 F.2d 1003, 1011 (11th Cir. 1984), superseded by

---

[2]We review the district court's decision limiting cross-examination for an abuse of discretion. United States v. Orisnord, 483 F.3d 1169, 1178 (11th Cir. 2007).

statute on other grounds, United States v. Elgersma, 929 F.2d 1538, 1544-45 (11th Cir. 1991).

However, "the Sixth Amendment does not require unlimited inquiry into the potential bias of a witness." United States v. Garcia, 13 F.3d 1464, 1469 (11th Cir. 1994) (quotation marks and brackets omitted). "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986). "The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." Garcia, 13 F.3d at 1469. "Once there is sufficient cross-examination to satisfy the Sixth Amendment's Confrontation Clause, further questioning is within the district court's discretion." Id. at 1468.

The district court did not abuse its discretion in limiting Denham's cross-examination of Heffner or deny Denham his constitutional rights to confront her and present a defense. Denham had a full and fair opportunity to impeach Heffner as to her bias and motive for testifying. The district court permitted Denham to

11

cross-examine Heffner about the fact that she could be prosecuted for the offenses for which Denham was being tried. During cross-examination, Heffner admitted that: (1) when she refused to cooperate, the government reminded her that she could be prosecuted; (2) she was "trying to do [her] best not to get prosecuted"; and (3) she was cooperating with the government in the hope that she would avoid prosecution. More importantly, the district court permitted Denham to elicit from Heffner that, if prosecuted, she faced "many years in prison." The cross-examination presented the jury with facts sufficient to evaluate Heffner's possible bias and incentive to testify untruthfully against Denham. The precise length of the possible sentence would not have given a reasonable jury a significantly different impression of Heffner's credibility.

Moreover, the district court restricted cross-examination only to the extent Denham wanted to inquire about the precise sentences Heffner would face if she were prosecuted for Denham's charged offenses. Information as to the severity of the sentence the defendant faces is "extrinsic and prejudicial," and the trial court is within its discretion to restrict cross-examination that would reveal such information to the jury. See Garrett, 727 F.2d at 1011-12 (affirming district court's limitation on cross-examination of cooperating witness as to specific, mandatory minimum prison term he faced if charged with the defendant's crime).

12

The district court also noted that information about the sentencing ranges for each count could confuse the jury if it is unaware that sentences often are imposed concurrently. We cannot say the district court abused its discretion in precluding this specific line of questioning.[3]

Finally, and contrary to Denham's assertion on appeal, Heffner's testimony was not essential to establish his knowledge that the victim was underage because (1) the victim herself testified that she told Denham she was 15 years old, and (2) Denham's sister testified that Denham admitted to her that the victim was underage.

**AFFIRMED.**

---

[3]Because there was no error in the district court's denial of a mistrial or limitation of Denham's cross-examination of Heffner, Denham cannot show cumulative error. See United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004) (explaining that where there is no error, there can be no cumulative error).