UNITED STATES of America,
Plaintiff–Appellee,

v.

Angel Amado GARCIA, Frank Chaves,
Defendants–Appellants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Frank CHAVES, Defendant–Appellant.

Nos. 90–5490, 92–4399.

United States Court of Appeals,
Eleventh Circuit.

Feb. 10, 1994.

J.C. Codias, Miami, FL, for Angel Amado Garcia.

Charles G. White, Miami, FL, for Frank Chaves.

William Xanttopoulos, Linda Collins Hertz, Lynne W. Lamprecht, Asst. U.S. Attys., Miami, FL, for U.S., in No. 90–5490.

James McAdams, III, U.S. Atty., Lynne W. Lamprecht, Asst. U.S. Atty., Miami, FL, for U.S., in No. 92–4399.

Before CARNES, Circuit Judge, FAY[*] and JOHNSON, Senior Circuit Judges.

JOHNSON, Senior Circuit Judge:

Defendants-appellants Frank Chaves ("Chaves") and Angel Amado Garcia ("Garcia") appeal their convictions on charges arising from thefts in Florida of goods in interstate commerce. Chaves also appeals his sentence.[1] For the reasons that follow, we

---

[*] See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. We consolidated the cases for the purposes of this opinion.

affirm appellants' convictions and Chaves' sentence.

## I.  STATEMENT OF THE CASE

### A.  *The April Theft*

On April 27, 1989, Luis Guevara, Eduardo Paula, and Orlando Brito stole a truck containing frozen seafood and drove to an abandoned warehouse. There, Guevara stated that he would ask Chaves, who owned a seafood company called J & F Seafood, to dispose of the seafood using one of Chaves' trucks. Upon Guevara's request, Chaves left the truck's key under the front seat.

On April 28, 1989, Guevara, Paula, Brito and Diego Diaz, Jr., picked up Chaves' truck at J & F Seafood and used the truck to transport part of the stolen seafood from the warehouse to Chaves' business. Chaves assisted them in unloading the truck's contents. Later that day, Chaves went to David Arthur Schlinder, a middleman in the sale of seafood, and offered him "a good deal on lobster tails," providing a sample case. Schlinder displayed the lobster tails to Henry Torres, a large distributor of seafood in the area. Torres told Schlinder that the lobster tails were stolen and belonged to him. Torres took the sample case and reclaimed the remainder of his seafood from Chaves. Later that day, Guevara and Diaz, Jr., returned to Chaves for payment, but Chaves refused to pay because he had returned the seafood to its rightful owner, Torres. When Guevara and Diaz, Jr., demanded Torres return the seafood, Torres threatened to call the Federal Bureau of Investigation ("FBI").

The next day, Chaves purchased the remainder of the frozen seafood from Diaz, Jr., and Guevara. Chaves also gave Guevara two bottles of champagne in recognition of Guevara's lost profits from Torres' reclamation of his seafood. Later, Chaves brought Schlinder into a large walk-in freezer at J & F

Seafood and told him that the FBI had approached Chaves and that Schlinder should not speak with them if contacted.

### B.  *The June Theft*

In June 1989, another theft of a truck containing frozen seafood occurred.[2] On June 22, 1989, Garcia identified to Paula and Brito the location of some tractor trailers. Four members of the group thereafter stole a tractor trailer loaded with frozen seafood and drove to a nearby warehouse where they set off the trailer's alarm. Garcia, who had since arrived, assisted them in quieting the alarm. After Garcia and two others left, Chaves was informed that the group had obtained frozen seafood and once again needed his truck.

Garcia and others used Chaves' truck to deliver part of the seafood to J & F Seafood. On June 24, 1989, Garcia, Paula, and Brito were paid their share of the proceeds of the delivered seafood, and Garcia and Paula were instructed to return to the warehouse to repair the refrigeration unit on the stolen tractor trailer. That evening, Garcia and Paula entered the warehouse and, when they exited, Garcia was carrying bolt cutters.[3] On June 25, 1989, Chaves refused to allow his truck to transport the stolen seafood. On June 26, 1989, Guevara, Paula, and Brito, who had since purchased another truck to transport the seafood, were arrested at the warehouse.[4]

### C.  *Procedural Background*

On August 4, 1989, a federal grand jury indicted Garcia and six others, including Brito but not Chaves, on charges arising out of the June theft. On October 6, 1989, the grand jury issued a superseding indictment replacing Chaves for Brito on charges arising out of the June theft and out of the earlier April theft.[5] Count I charged Chaves,

---

**2.** On May 4, 1989, Garcia, Brito and two others drove by several cold storage facilities in the Miami metropolitan area, stopping to check the contents of tractor trailers.

Garcia, Chaves, Brito, and others participated in the theft of a tractor trailer filled with frozen seafood and the sale of its contents in mid-May, 1989.

**3.** The bolt cutters were used to repair the refrigeration unit.

**4.** On August 1, 1989, FBI agents Keith and Putnam and Metro–Dade Police Department detectives Alvarez and Rosario interviewed Chaves, who denied purchasing any seafood from the group and claimed not to know any of them.

**5.** Brito became a government witness.

among others, with conspiracy to steal the April shipment in violation of 18 U.S.C.A. § 371 (West 1966). Count II charged Chaves, among others, with possession of the stolen April shipment in violation of 18 U.S.C.A. § 659 (West 1976) and 18 U.S.C.A. § 2 (West 1969). Count III charged Chaves and Garcia, among others, with conspiracy to steal the June shipment in violation of 18 U.S.C.A. § 371. Count IV charged three non-appellants with theft of the June shipment in violation of 18 U.S.C.A. §§ 2 & 659. Count V charged Chaves, Garcia, and others with possession of the stolen June shipment in violation of 18 U.S.C.A. §§ 2 & 659.

A jury found Chaves guilty of counts I and II, related to the April theft, and not guilty of counts III and IV, related to the June theft. The jury found Garcia guilty of counts III and V, related to the June theft.[6] On May 10, 1990, the district court sentenced Chaves to a twenty-four month term of imprisonment followed by three years of supervised release, as well as restitutory payment of $18,000. The court sentenced Garcia to an eighteen month term of imprisonment followed by three years of supervised release. Chaves and Garcia appealed.[7] Chaves is on bond pending appeal. Garcia is serving his term of supervised release.

## II. ANALYSIS

Chaves raises the following claims: (1) the district court improperly limited the cross-examination of Brito, who testified as a government witness; (2) the court erred by amending the jury instructions; (3) the court erroneously added two points to Chaves' guidelines score for having engaged in relevant conduct that involved more than minimal planning and two additional points for obstruction of justice; and (4) the court abused its discretion by denying Chaves' motion for a new trial based on newly discovered evidence. Garcia raises the following claims on appeal: (1) the court improperly

admitted evidence prejudicial to Garcia; (2) insufficient evidence was adduced at trial to support Garcia's conviction for knowing possession of stolen property; and (3) the prosecutor's closing argument violated Garcia's Fifth Amendment right against self-incrimination.

### A. Cross–Examination of Brito

■ The district court has discretionary authority to rule on the admissibility of evidence, including the power to limit cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679–80, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d 674 (1986); *United States v. Lankford*, 955 F.2d 1545, 1548 (11th Cir.1992). The district court's discretion is limited, however, by the requirements of the Sixth Amendment.[8] *Id.* A central function of the Sixth Amendment right to cross-examination is to expose the witness' motivation in testifying. *Jenkins v. Wainwright*, 763 F.2d 1390, 1392 (11th Cir.1985) ("This court has long recognized the particular importance of searching cross-examination of witnesses who have substantial incentive to cooperate with the prosecution."), *cert. denied*, 476 U.S. 1164, 106 S.Ct. 2290, 90 L.Ed.2d 730 (1986). Full cross-examination by defense counsel is especially critical when the witness sought to be questioned is the chief government witness. *Lankford*, 955 F.2d at 1548. The right to cross-examine, however, is not unlimited. Once there is sufficient cross-examination to satisfy the Sixth Amendment's Confrontation Clause, further questioning is within the district court's discretion. *United States v. Kopituk*, 690 F.2d 1289, 1337 (11th Cir.1982), *cert. denied*, 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed.2d 300 *and cert. denied*, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983).

■ In this case, the district court limited Chaves' cross-examination of the chief gov-

---

6. The jury convicted co-defendants Diaz, Jr., and Paula of counts I, II, and IV. The jury convicted co-defendant Guevara of counts I and II. Co-defendants Diego Diaz, Sr., and Armado Perea were acquitted.

7. On April 9, 1990, Chaves filed a motion for a new trial, which was denied. After filing a notice of appeal on July 12, 1990, Chaves filed a

second motion for new trial, asserting grounds of newly discovered evidence. After an evidentiary hearing, the district court denied this motion.

8. The Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const., sixth amend.

ernment witness against him, Orlando Brito. Chaves sought to elicit from Brito, as evidence of a possible motive for Brito's cooperation with the prosecution, the Florida state attorney's *nolle prosequi* of a 1983 state false imprisonment charge against Brito.[9] The district court also forbade cross-examination concerning alleged wife-beating by Brito and the fact that Brito had formerly been shot. We conclude that the district court did not abuse its discretion by so limiting the cross-examination of Brito.

As previously noted, "[t]he Sixth Amendment does not require unlimited inquiry into the potential bias of a witness." *United States v. De Parias*, 805 F.2d 1447, 1452 (11th Cir.1986), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3189, 96 L.Ed.2d 678 (1987). The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination. *Van Arsdall*, 475 U.S. at 680, 106 S.Ct. at 1436; *United States v. Leavitt*, 878 F.2d 1329, 1339 (11th Cir.), *cert. denied*, 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989). Here, all seven defense counsel, including Chaves' attorney, had the opportunity to raise doubts about Brito's credibility, and their examinations brought out that Brito had provided testimony favorable to the government in exchange for lenient treatment. In particular, counsel for Chaves cross-examined Brito as to the terms of his federal plea agreement and entered the agreement into evidence. Furthermore, when asked by a defense attorney to list all the state charges for which he was receiving leniency, Brito excluded the

false imprisonment charge.[10] Therefore, a reasonable juror would not have received a different impression about Brito's motivation for testifying had the district court permitted cross-examination about the state false imprisonment charge. *See United States v. Alonso*, 740 F.2d 862, 874–75 (11th Cir.1984) (affirming district court's exclusion of cross-examination, in part because jury was exposed to potential for bias), *cert. denied*, 469 U.S. 1166, 105 S.Ct. 928, 83 L.Ed.2d 939 (1985). Accordingly, the district court did not abuse its discretion by forbidding this line of cross-examination.[11]

### B. *Amendment of Model Jury Instructions*

The district court deviated from the Eleventh Circuit pattern instruction to consider each defendant and each count separately,[12] stating that the jury's decision as to the guilt or innocence of any defendant "need not necessarily" affect its verdict as to another defendant, instead of stating that the jury's decision "should not" affect its verdict as to another defendant. Chaves contends that this instruction may have encouraged the jury to impute to him his co-defendants' knowledge that the seafood was stolen. *See United States v. Tavoularis*, 515 F.2d 1070, 1074 (2d Cir.1975) (where substantive offense requires specific knowledge, that knowledge may not be imputed). So long as the jury charge as a whole accurately reflects the law and the facts, the district court has broad discretion in formulating a jury charge. *United States v. Turner*, 871 F.2d 1574, 1578 (11th Cir.), *cert. denied*, 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989).

---

9. There was no evidence that the state attorney *nolle prossed* this charge as part of Brito's plea bargain in this case.

10. Moreover, defense counsel did cross-examine Brito about facts underlying the *nolle prossed* charge to the degree they bore on his credibility, such as his impersonation of a police officer in making the false imprisonment.

11. Similarly, the trial court's rulings that limited the cross-examination of Brito concerning an incident in which he was injured when shot in a bar and concerning allegations that he had battered his wife were not abuses of discretion. Chaves contends that these incidents were evidence of intent under Federal Rule of Evidence

404(a) and could have impeached Brito's character under Rule 608(b). These claims are without merit.

12. Eleventh Circuit Pattern Jury Instruction (Criminal Cases) 10.4 provides in pertinent part:

A separate crime or offense is charged against one or more of the Defendants in each count of the indictment. Each offense, and the evidence pertaining to it, should be considered separately. Also, the case of each Defendant should be considered separately and individually. The fact that you may find one or more of the Defendants guilty or not guilty of any of the offenses charged should not affect your verdict as to any other offense or any other Defendant.

We shall assume *arguendo* that, read in isolation, the court's statement that the jury's decision as to the guilt or innocence of any defendant "need not necessarily" affect its verdict as to any other defendant imputed knowledge among the defendants. Nonetheless, it is without question that the district court's instructions, as a whole, substantially informed the jury to avoid imputing knowledge among defendants. Immediately after the above charge, the court supplemented the pattern instruction: "The important thing for you to remember[,] and particularly important in the case where you have seven defendants, is that each defendant and the case against each one, the separate counts against each one is a separate case and they should be treated individually in your consideration." Further, the district court expressly instructed the jury that the government had to prove that each defendant knew the property was stolen. As a whole, then, the district court's instructions amply directed the jury that its verdict as to one defendant should not affect its verdict as to any other defendant.[13] Hence, the district court's jury charge was not an abuse of discretion.[14]

### C. Enhancement of Chaves' Sentence

The district court gave two enhancements to Chaves' sentence. First, the court found that Chaves' offenses involved more than minimal planning and thus increased his base offense level by two steps, pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2B1.2(b)(3)(B) (Nov. 1, 1989).[15] Second, the court found that Chaves obstructed jus-

tice by attempting to induce Schlinder to hide relevant information from the FBI and thus increased his base offense level by two more levels, pursuant to U.S.S.G. § 3C1.1 (Nov. 1, 1989).[16]

█ A finding of "more than minimal planning" is reviewed for clear error. *United States v. Scroggins*, 880 F.2d 1204, 1215 (11th Cir.1989), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990). Section 2B1.2(b)(3)(B) provides that the offense level for the crime of receipt of stolen property from interstate commerce increases by two levels if the offense involved "more than minimal planning." The Guidelines define "more than minimal planning" as "more planning than is typical for commission of the offense in a simple form," and stress that " 'more than minimal planning' is deemed present in any case involving repeated acts over a period of time," except where each instance was clearly "opportune." U.S.S.G. § 1B1.1, comment, (n. 1(f)) (Nov. 1, 1989). "More than minimal planning" also exists "if significant affirmative steps were taken to conceal the offense." *Id.*

█ The facts of this case confirm the district court's determination that Chaves' role was more than minor. His "relevant conduct" includes reasonably foreseeable actions in furtherance of the conspiracy by his coconspirators. U.S.S.G. § 1B1.3(a) (Nov. 1, 1989).[17] *See also id.*, comment, (n. 1) (defining conduct for which defendant "would otherwise be accountable" to include "conduct of others in furtherance of the execution of the

---

13. Chaves further claims that the other instruction did not cure any error because the instructions were inconsistent and therefore misleading. However, "it is not sufficient simply to demonstrate that an instruction had the potential to confuse a jury. Appellant must raise *substantial and ineradicable doubt* whether the jury has been properly guided in its deliberations." *United States v. Pruitt*, 763 F.2d 1256, 1260 (11th Cir. 1985) (emphasis added), *cert. denied*, 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986).

14. Furthermore, the verdicts rendered by the jury repudiate Chaves' contention that, based on the court's instructions, the jury may have imputed knowledge from one defendant to another. The jury acquitted two defendants on all counts and acquitted Chaves on counts III and IV (related to the June theft), though it convicted other co-defendants on count IV.

15. We apply the version of the Guidelines in effect on the date of sentencing. *United States v. Wilson*, 993 F.2d 214, 216 (11th Cir.1993).

16. As a result of the added points, the permissible range of sentencing increased from twelve through eighteen months to twenty-four through thirty months, and the court consequently sentenced Chaves to a twenty-four month term of incarceration.

17. Section 1B1.3(a) defines "relevant conduct" as "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense."

jointly-undertaken criminal activity that was reasonably foreseeable by the defendant"); *United States v. Fuentes,* 991 F.2d 700, 701 (11th Cir.1993) (per curiam) (conspiracy defendant can be sentenced for reasonably foreseeable coconspirator acts committed in furtherance of conspiracy). Here, the conspirators . engaged in repeated acts over a period of time as they frequently searched for tractor trailers loaded with seafood, stole several tractor trailers, hid them in a warehouse, and used Chaves' truck to redistribute the stolen seafood to Chaves, who then fenced the stolen merchandise. *See United States v. Mullins,* 996 F.2d 1170, 1171 (11th Cir.1993) (per curiam) (defendant's three separate purchases of vehicles with worthless checks authorizes enhancement). Further, the use of an abandoned warehouse to secrete the stolen trucks demonstrates that the thefts were deliberate. Hence, there is ample factual support in the record evidencing the extensive planning that this undertaking required, and the trial court was not clearly erroneous in finding Chaves' role in the conspiracy constituted more than minimal planning.

■■■ Chaves also attacks the two-step enhancement of his sentence based on the district court's finding that he obstructed justice by asking Schlinder not to speak with FBI agents. Whether the district court properly applied the obstruction of justice enhancement is a mixed question of law and fact. *United States v. Burton,* 933 F.2d 916, 917 (11th Cir.1991) (per curiam). The district court's findings of fact are reviewed under a clearly erroneous standard, though the court's application of law to those facts is reviewed *de novo. Id.*

■■■ The Sentencing Guidelines mandate a two-level enhancement "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct, the administration of justice during the investigation or prosecution of the instant offense." U.S.S.G.

§ 3C1.1 (Nov. 1, 1989). Examples of obstructive conduct include (1) directing another person to conceal material evidence and (2) threatening or unlawfully influencing a witness. *See id.,* comment, (n. 1(b)) (adjustment applicable for "directing or procuring another person to ... conceal material evidence, or attempting to do so); *id.,* comment, (n. 1(d)) (adjustment applicable for "threatening, intimidating, or otherwise unlawfully attempting to influence a ... witness, directly or indirectly"). Here, the district court enhanced Chaves' sentence after concluding that he obstructed justice by bringing Schlinder into a walk-in freezer and asking him not to speak with the FBI.[18] Provided the language used by Chaves and the circumstances surrounding its use, the court was not clearly erroneous in finding that Chaves' conduct constituted obstruction of justice. *See United States v. Holland,* 884 F.2d 354, 359 (8th Cir.) (defendant's requesting co-defendant not to mention involvement of certain individuals when speaking to law enforcement officers warranted sentencing enhancement for obstruction of justice), *cert. denied,* 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989).[19]

This Court has recognized that "[t]he sentence imposed is committed to the discretion of the trial court and, so long as the sentence falls within the range provided by statute, generally will not be reviewed on appeal." *United States v. Funt,* 896 F.2d 1288, 1298 (11th Cir.1990). On these facts, Chaves' sentence falls within the statutory guidelines for sentencing.

**D.** *Motion for New Trial*

After sentencing, Chaves filed a motion for a new trial based upon newly discovered evidence concerning FBI agent Putnam, who served as a government witness. Chaves contends that, because Putnam was a suspect in an unrelated murder investigation by the State of Kentucky at the time of Chaves'

---

**18.** Schlinder testified that, once in the freezer, Chaves stated that the FBI had contacted him and that Schlinder should falsely advise the FBI that he knew nothing of the April theft.

**19.** Chaves also claims that he lacked notice that the court contemplated an enhancement based upon his conversation with Schlinder because

the presentence investigation report ("PSI") failed to recommend an enhancement for this reason. This claim is without merit. The PSI did recommend an enhancement for obstruction of justice, and Chaves' written objection to that recommendation specifically discussed Chaves' conversation with Schlinder.

trial, Chaves could have impeached Putnam's testimony and brought out bias, had the government disclosed that Putnam was under investigation. The district court denied the motion after a hearing.

A motion for new trial based on newly discovered evidence is committed to the sound discretion of the trial court and will not be overturned absent abuse of discretion. *United States v. Champion*, 813 F.2d 1154, 1170 (11th Cir.1987). The district court should use "great caution" in granting a new trial motion based on newly discovered evidence. *United States v. Johnson*, 713 F.2d 654, 661 (11th Cir.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). If a post-trial investigation reveals new evidence unknown to the government at the time of trial, that evidence is admissible only if: (1) the evidence was in fact discovered after trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence was not merely cumulative or impeaching; (4) the evidence was material; and (5) the evidence was of such a nature that a new trial would probably produce a new result. *United States v. Bollinger*, 796 F.2d 1394, 1401 (11th Cir.1986), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988).

In this case, the district court found that Chaves failed to make out the third and fifth requirements of this test. Upon review of the record, we agree. First, Chaves fails to make out the third requirement because the newly discovered evidence at most would merely have impeached Putnam. *See Champion*, 813 F.2d at 1171 ("Newly discovered impeaching evidence is unworthy of a new trial."). Second, Chaves fails to satisfy the fifth requirement—that introduction of the evidence would likely produce a different result at a new trial. Agent Putnam was but one of several witnesses against Chaves. Moreover, Putnam was not even a critical witness. Keith, another FBI agent, could have provided the same substantive testimony, as Putnam's trial testimony concerned an interview with Chaves that was conducted jointly by Keith and Putnam.

Chaves also claims that the newly discovered evidence constituted exculpatory evidence suppressed by the government in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). To make out a *Brady* violation, the defendant must establish that the government suppressed material evidence favorable to the defendant. *United States v. Knight*, 867 F.2d 1285, 1289 (11th Cir.), *cert. denied*, 493 U.S. 846, 110 S.Ct. 139, 107 L.Ed.2d 98 (1989). Nondisclosed evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (Blackmun, J., judgment). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome" of the trial. *Id.* As the prosecution in this case was unaware of the Kentucky investigation concerning Putnam at the time of Chaves' trial, and as Agent Keith could have replaced Putnam with no substantive change in testimony, no different result would have occurred had Putnam's testimony been barred. Accordingly, the district court did not abuse its discretion in denying Chaves' motion for a new trial.

### E. *Admission of Hearsay Testimony*

Garcia maintains that the district court erred when it admitted Brito's testimony regarding an incident in April 1989, when Garcia and Brito were driving with some others in a car. Brito testified that Guevara pointed out to him the site of a tractor trailer that the group had stolen in February 1989. The court admitted the statement against Garcia as a coconspirator's statement under Federal Rule of Evidence 801(d)(2)(E).

An out-of-court statement by a coconspirator is admissible under Rule 801(d)(2)(E) [20] if the trial judge determines that the government has proven by a preponderance of the evidence that (1) a conspiracy existed, (2) the defendant and the declarant participated in the conspiracy, and (3) the

---

**20.** Rule 801(d)(2)(E) provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay.

statement was made during the course of and in furtherance of the conspiracy. *United States v. Turner*, 871 F.2d 1574, 1581 (11th Cir.), *cert. denied*, 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989). The district court's determination that a statement is in furtherance of a conspiracy will not be reversed on appeal unless clearly erroneous. *United States v. Beale*, 921 F.2d 1412, 1422 (11th Cir.), *cert. denied*, ── U.S. ──, 112 S.Ct. 99, 116 L.Ed.2d 71 *and cert. denied*, ── U.S. ──, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991). Here, the statement was made prior to the formation of a conspiracy involving Garcia.[21] Accordingly, the district court's finding to the contrary was clearly erroneous.[22]

■■■■ However, this conclusion does not end our inquiry. The improper admission of coconspirator hearsay is subject to the harmless error rule. *United States v. Cross*, 928 F.2d 1030, 1052 (11th Cir.), *cert. denied*, ── U.S. ──, 112 S.Ct. 594, 116 L.Ed.2d 618 (1991), *and cert. denied*, ── U.S. ──, 112 S.Ct. 941, 117 L.Ed.2d 112 (1992). We find that Garcia is not entitled to prevail on appeal because the error did not substantially influence the verdict, which was supported by sufficient evidence. *United States v. Christopher*, 923 F.2d 1545, 1552 (11th Cir.1991). The statement was of little significance to the case against Garcia which, as shown in Part II.F., was strong. Accordingly, we find that Garcia is not entitled to a new trial because the error in question was "harmless beyond a reasonable doubt." *Turner*, 871 F.2d at 1582.

### F. Sufficiency of Evidence Against Garcia

■■■■■ Garcia next contests the sufficiency of the evidence to support his convic-

tion for possession of the stolen seafood under 18 U.S.C.A. § 659. Garcia claims the government failed to show that he possessed the stolen seafood. Sufficiency of the evidence is a question of law that this Court reviews *de novo*. *United States v. Kelly*, 888 F.2d 732, 739 (11th Cir.1989). The Court examines the evidence, including all reasonable inferences and credibility choices, in the light most favorable to the government. *Id.* at 740. The inquiry is whether a factfinder could find the evidence establishes guilt beyond a reasonable doubt. *Id.* The Court need not exclude every reasonable hypothesis of innocence or find guilt to be the only reasonable conclusion. *Id.*

■■■■ To sustain a conviction under section 659, the government must prove, *inter alia*, that the defendant had possession of the seafood. *See United States v. Parker*, 749 F.2d 628, 631 (11th Cir.1984) (describing elements of offense). The facts of this case indicate that Garcia possessed the stolen seafood: he appeared at the warehouse to silence the alarm on the stolen truck, went to Chaves' business to obtain a truck to transport the stolen goods, discussed the theft with the others at Guevara's apartment, received payment for his participation, was directed to return to the warehouse to fix the broken refrigeration unit on the truck, returned to the warehouse, and exited the warehouse carrying bolt cutters. Accordingly, a rational factfinder could find the evidence established guilt beyond reasonable doubt that Garcia possessed the seafood stolen from the June shipment.[23]

### G. Motion for Mistrial

Garcia also claims on appeal that the prosecutor intentionally referred to his failure to

---

**21.** In the superseding indictment, Garcia was charged only in counts III and V, related to the June 1989 conspiracy, not to the counts related to the April conspiracy. Thus, as presented initially by the government, Garcia was a member of the June conspiracy, not the April conspiracy for which Guevara's coconspirator statement was made two months before Garcia's criminal involvement. *See Beale*, 921 F.2d at 1423 ("where there are multiple conspiracies, it is error to admit a statement which merely advances some other conspiracy not involving the defendant against whom it is admitted").

**22.** Consequently, we need not address whether Federal Rule of Evidence 404(b) was violated by admitting the statement.

**23.** Moreover, even if Garcia did not himself have direct control of the stolen property, he nonetheless had constructive possession as the coconspirators together exercised sufficient control over the chattel. *See United States v. De Corte*, 851 F.2d 948, 954 n. 4 (7th Cir.1988) (driver of stolen tractor trailer remained in possession of truck and its goods while stored in garage because coconspirator was in possession).

testify at trial, thereby violating Garcia's Fifth Amendment right to remain silent.[24] Garcia further contends that the district court committed reversible error when it failed to order a mistrial in response. The government contends, and we agree, that the prosecutor's statements, rather than being a comment on Garcia's failure to testify, were instead directed to defending the credibility of a government witness.

 The standard for determining if a prosecutor has impermissibly commented on a defendant's decision not to testify is "whether the statement was manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Swindall,* 971 F.2d 1531, 1551 (11th Cir.1992). "The question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury *necessarily* would have done so." *Id.* at 1552. We apply this test by examining the statements in their context to evaluate the prosecutor's motive behind the statement and to discern the impact of the statement. *United States v. Smith,* 918 F.2d 1551, 1563 (11th Cir.1990). The appellant bears the burden to establish at least one of these two criteria. *Swindall,* 971 F.2d at 1551.

We review the district court's determination of whether "manifest intent" was present under an abuse of discretion standard. *United States v. Watson,* 866 F.2d 381, 386 (11th Cir.1989). We conclude that the district court could have reasonably construed the prosecutor's comments as not manifestly intended to comment on Garcia's failure to testify. *See Swindall,* 971 F.2d at 1551–52 (if neutral explanation exists for prosecutor's remarks, then "manifest intent" is not present). Further, the statements were not of such a nature that the jury would have necessarily taken them to be comments

on Garcia's failure to testify. Rather, the comments addressed the failure of the defense to present evidence of any kind countering Brito's testimony, the principal government witness. Consequently, the district court did not err in denying Garcia's motion for mistrial.[25]

## III. CONCLUSION

Chaves' convictions and sentence are AFFIRMED. Garcia's convictions are also AFFIRMED.

---

24. "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V.

25. Further, even if the prosecutor did comment on Garcia's failure to testify, the trial court's

curative instruction was adequate. *Swindall,* 971 F.2d at 1552; *see Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (unconstitutional prosecutorial comment on defendant's failure to testify is subject to harmless error rule).