[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11163
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60011-RNS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDRE D. BARBARY,

Defendant-Appellant.

_____

No. 16-11491
Non-Argument Calendar
_____

D.C. Docket No.  0:12-cr-60011-RNS-9

UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

                              versus

MONICA I. LEWIS,

                                                        Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(February 23, 2017)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

In these consolidated appeals, defendant-appellants Andre Barbary and Monica Lewis, proceeding pro se, challenge the district court's denial of their motions for new trial filed pursuant to Federal Rule of Criminal Procedure Rule 33.

In November 2012, a jury convicted defendants Barbary and Lewis and two other codefendants of conspiracy to possess and distribute cocaine and oxycodone and conspiracy to use a communication facility to commit a felony. According to the trial evidence, which included wiretap evidence and the testimony of several coconspirators, for twelve years Barbary was the leader of an interstate drug

2

trafficking organization distributing large quantities of narcotics, including cocaine and oxycodone, within Florida and to other states such as South Carolina, Alabama, and Massachusetts.  Lewis was one of the members of the conspiracy who transported drugs and drugs proceeds for Barbary.  The district court sentenced Barbary to a total 240 months' imprisonment and Lewis to a total 90 months' imprisonment.  This Court affirmed Barbary and Lewis's convictions on direct appeal.  See United States v. Holt, 777 F.3d 1234 (11th Cir. 2015).

In October 2015, defendant Barbary filed his pro se Rule 33 motion for a new trial based on newly discovered evidence and prosecutorial misconduct, citing Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).  Defendant Lewis filed her own pro se Rule 33 motion adopting Barbary's Rule 33 motion.  The district court denied both Rule 33 motions in a single order, concluding that: (1) the defendants had not shown due diligence in failing to obtain the new evidence before trial; (2) the evidence was merely impeaching; and (3) the evidence would not have altered the jury's guilty verdict.  After review, we affirm.[1]

## I.    NEWLY DISCOVERED EVIDENCE

The district court did not abuse its discretion in denying defendants Barbary's and Lewis's Rule 33 motions for a new trial based on newly discovered evidence.  To merit a new trial, a defendant must show that: (1) the evidence was

---

[1]We review the district court's disposition of a motion for new trial for an abuse of discretion.  United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985).

in fact discovered following trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is of such a nature that a new trial would probably produce a different result.  United States v. Lee, 68 F.3d 1267, 1273 (11th Cir. 1995).  The defendant must satisfy all of these elements to warrant relief. United States v. Williams, 816 F.2d 1527, 1530 (11th Cir. 1987).

The new evidence attached to defendant Barbary's Rule 33 motion consisted of documents obtained from the Miramar Police Department in response to a post-judgment open records request.  Most of the documents pertained either to (1) Lamar Bennett, one of the coconspirators who testified for the government at Barbary and Lewis's trial; or (2) the Drug Enforcement Agency's ("DEA") investigation of the drug conspiracy from February 2010 to January 2012.

Relevant to this appeal, the documents included: (1) initial and supplemental reports by the Miramar Police Department officers about the 2009 arrest and investigation of Lamar Bennett and his brother Brendan for sale/manufacture of OxyContin and transcripts of the Bennett brothers' post-arrest interviews (Exhibits 1 and A-1); (2) a May 12, 2010 DEA case status report indicating that "due to other priority enforcement operations, proactive measures to obtain information regarding Andre Barbary and his associates have been limited in nature," but that the "case will remain open in active status" (Exhibit O); (3) a September 28, 2011

4

DEA investigation report regarding aerial surveillance of Barbary as he drove around Opa Locka, Florida on September 27, 2011 (Exhibit S); and (4) a January 19, 2012 DEA investigation report of the arrest and search of Barbary on January 13, 2012, including a summary of his post-arrest statements to investigators (Exhibit DRE).

The supplemental police reports from the Miramar Police Department do not warrant a new trial. These supplemental police reports contained no new information, as they only reiterate what defendants Barbary and Lewis already knew at the time of trial, namely that Bennett had a prior criminal record of drug dealing. Indeed, Bennett testified at trial that he had been selling drugs since 1995 and that he had been arrested several times for, among other things, possession of drugs and had served time in prison from 1996 to 2000. Furthermore, defendants Barbary and Lewis themselves argued in their Rule 33 motions only that the supplemental police reports showed that Bennett "was unreliable." However, during the trial, Barbary, Lewis and their co-defendants repeatedly used Bennett's history of drug dealing, including Bennett's multiple prior arrests and convictions, to impeach him. Accordingly, the supplemental police reports were merely cumulative and impeaching.

Perhaps more importantly, defendants Barbary and Lewis already knew that Bennett's criminal history included a 2009 arrest by the Miramar Police

Department for OxyContin possession.  Specifically, approximately ten months before trial, the government produced to the defendants the initial Incident/Investigation report indicating that Bennett and his brother Brendan were arrested by the Miramar Police Department in March 2009 after Bennett was found to possess 286 OxyContin pills.  Defendants Barbary and Lewis have not explained why with due diligence they could not have discovered the Miramar Police Department's supplemental reports and interview transcripts before trial.

As to Exhibit O, the DEA case status report, defendants Barbary and Lewis have not demonstrated that this evidence was material to the issues at trial or that its admission in a new trial would have resulted in a different outcome.  See Lee, 68 F.3d at 1273.  Exhibit O shows that the DEA's two-year investigation into Barbary's drug trafficking organization, which began in February 2010, was "limited in nature" in May 2010.  Trial testimony showed, however, that defendants Barbary and Lewis and the agents investigating them were active at many times before and after May 2010, and there is no evidence in the record that the DEA's investigation at large was somehow compromised or tainted by a pause in the investigators' work.

Importantly, nothing in the supplemental police reports or Exhibit O calls into question Bennett's trial testimony that defendants Barbary and Lewis were both involved in an extensive drug trafficking organization.  Nor does any of the

6

information in these documents call into question the wiretap application and the affidavit in support prepared by Special Agent Amber Sargent, which was premised largely on information provided by confidential informants, cooperating defendants, and investigators conducting surveillance, traffic stops, and searches of coconspirators.[2]

For these reasons, the district court did not abuse its discretion in denying defendants Barbary's and Lewis's Rule 33 motions based on newly discovered evidence. Moreover, because the new evidence Barbary and Lewis presented to the district court was, on its face, cumulative, impeaching, and immaterial to the issue at trial, and its introduction would not have resulted in a different outcome, the district court in this instance was not required to first hold an evidentiary hearing. See United States v. Culliver, 17 F.3d 349, 350-51 (11th Cir. 1994).

## II. **BRADY** CLAIM

As to their Brady claim, defendants Barbary and Lewis argue that the government concealed Exhibit O, the May 2010 DEA case status report, and that Exhibit O shows that Special Agent Sargent's affidavit in support of the wiretap

---

[2]Defendants did not address Exhibits S and DRE in their initial briefs, and thus abandoned any argument as to them. See United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998). In any event, these documents do not warrant a new trial. Exhibit S summarizes surveillance of Barbary on September 27, 2011, but the government did not introduce any testimony regarding Barbary's conduct on that date. Exhibit DRE summarizes Barbary's January 2012 post-arrest statements, in which he merely made clear that he was not willing to cooperate and denied any involvement in a drug conspiracy. Neither document would likely have produced a different result at trial.

application contained "deliberate omission and falsehood" as to the necessity of the wiretap.[3]

To prevail on a Brady claim, a defendant must establish three elements: (1) the evidence is favorable to the defendant because it is exculpatory or impeaching; (2) the government suppressed the evidence; and (3) the evidence is material so as to establish prejudice.  United States v. Naranjo, 634 F.3d 1198, 1212 (11th Cir. 2011).  Nondisclosed evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different.  United States v. Garcia, 13 F.3d 1464, 1472 (11th Cir. 1994).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  United States v. Brester, 786 F.3d 1335, 1339 (11th Cir. 2015).

The district court did not abuse its discretion in denying the defendants' Rule 33 motions based on Brady.  Neither defendant has met the three elements necessary to prevail on a Brady claim.  Even assuming arguendo that the government suppressed Exhibit O, the defendants have not established how that evidence is material, as discussed above.  There is not a "reasonable probability" that Exhibit O undermines either the evidence presented at trial or Special Agent

---

[3]With respect to their Brady claim, the defendants argue only that the government suppressed Exhibit O.  Thus, in reviewing this claim, we do not address any of the other documents attached to Barbary's Rule 33 motion.  See Cunningham, 161 F.3d at 1344.

Sargent's wiretap affidavit to such an extent (if at all) that a new trial would produce a different result.  See Brester, 786 F.3d at 1339.

Contrary to the defendants' claims, Exhibit O does not reveal any false statements or omissions in Special Agent Sargent's wiretap affidavit.  Special Agent Sargent's 111-page affidavit was prepared in August 2011, more than a year after the May 2010 case status report.  The affidavit outlined in extensive detail the DEA's efforts to investigate Barbary's drug trafficking organization over the preceding 18 months.  Importantly, Special Agent Sargent's summary of the investigation is consistent with Exhibit O in that she reports investigatory developments in March 2010 and then in June and September 2010, but does not report any developments in April or May 2010.  The affidavit further recounts numerous developments in the investigation between January and July 2011.  Thus, Special Agent Sargent's affidavit does not conflict with Exhibit O, which shows that the DEA investigation was "limited in nature" in May 2010, but remained open and active.

As to necessity, Special Agent Sargent's affidavit explained that investigators had used confidential informants, but had been unable to make controlled purchases from the Barbary organization, and, even if they had been successful, these purchases would not have resulted in the identification of all of the organization's members or their method of operation.  Further, Special Agent

9

Sargent asserted that physical surveillance had met with limited success because of evasion and counter-surveillance, and that trash pulls would be difficult because law enforcement agents would be identified as outsiders in the neighborhoods where the targets resided, and would be of limited use in explaining the large scale interstate nature of the organization.  As to search warrants, the affidavit explained that there was insufficient evidence to search a number of organization members' residences, and there was a risk that executing search warrants at some locations would result in the destruction of evidence at others.  The affidavit also explained the inadequacy of other methods, such as the use of asset seizures, undercover agents, toll and pen register analysis, grand jury subpoenas, interviews and arrest warrants.

Nothing in Exhibit O contradicts Special Agent Sargent's averments about the need for a wiretap in any way.  Exhibit O, and indeed all of the newly discovered evidence attached to Barbary's motion, does not undermine the wiretap application, the wiretap evidence introduced at trial, or the testimony of multiple coconspirators, all of whom tied defendants Barbary and Lewis to the drug conspiracy for which they were convicted and sentenced.  In sum, the district court properly denied the defendants' Rule 33 motions based on Brady because Exhibit O, even if undisclosed, was not material so as to establish prejudice.

**AFFIRMED.**

10