[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11917
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cr-00189-KD-B-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GERALD BARBER,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(April 17, 2019)

Before MARTIN, NEWSOM and BLACK, Circuit Judges.

PER CURIAM:

Gerald Barber appeals his two convictions for possessing with intent to manufacture and distribute 80.8 grams of cocaine base, 21 U.S.C. § 841(a)(1), (b)(1)(B), and possessing with intent to distribute 3.4 grams of cocaine base, 21 U.S.C. § 841(a)(1).  Barber contends the district court violated his rights under Federal Rules of Evidence 806 and the Sixth Amendment by preventing him from introducing a perjury conviction regarding a non-testifying person, and by prohibiting him from cross-examining a witness to impeach the non-testifying person.  After review, we affirm Barber's convictions.

## I.  BACKGROUND

The relevant facts are as follows.  Prior to Barber's January 2018 trial, the Government filed an *ex parte* motion for a pretrial ruling on evidence under seal arguing that evidence not be subject to disclosure.  Specifically, the Government argued that an October 21, 2003 incident involving a police sergeant who assisted in Barber's arrest should not be discoverable at Barber's trial because it was not material, as the Government did not intend to call the sergeant at trial.  The Government argued that the sergeant, Nash Gipson, was "not critical to the Government's case in chief" and was not needed to establish a chain of custody for the contraband at issue in Barber's case.  The district court granted the motion as to whether the information was discoverable and ordered the Government to disclose

2

information regarding Gipson as possible *Brady*[1] material.  The district court

denied the Government's motion for pretrial ruling as to the admissibility of the

evidence, as Barber had not yet had an opportunity to respond to the motion.

The Government then filed a motion *in limine* requesting the court prohibit

Barber from referencing Gipson's 2003 conduct at trial because it should be

inadmissible.  Barber responded to the motion, arguing that a prohibition on

referring to Gipson's conviction would violate his Fifth and Sixth Amendment

rights because Gipson's credibility was a "central issue[] in the trial of this case."

Barber also filed evidence of Gipson's 2006 guilty plea[2] for, and convictions of,

bribing a witness and perjury in his warrant affidavit by falsely stating that his

criminal informant had witnessed a cocaine base sale.

At the start of trial, the court asked for a proffer from Barber regarding

Gipson's conviction.  Barber stated that he would wait to make a proffer depending

on what happened in the Government's case.  The court ordered Barber to refrain

from mentioning Gipson's conviction in his opening statement.

During trial, Chief of Police Willie Walton testified to the following.  On

April 12, 2017, Walton was patrolling when he saw Mark Jones, a man Walton

---

[1]  *Brady v. Maryland*, 373 U.S. 83 (1963).

[2]  While the incident took place in 2003, Gipson pled guilty to bribing a witness and perjury in 2006.

3

knew to have several controlled substance offenses for cocaine use. Jones was standing next to a white SUV with expired tags, speaking to the person in the driver's seat. Jones noticed and recognized Walton and ran away. Walton activated his lights and siren, the white SUV sped away, and Walton gave chase. While Walton was pursuing the SUV, he noticed the driver make a "throwing motion" and saw something exit the vehicle on Washington Street. Walton continued his chase and saw the driver make a second "throwing motion" and something exit the vehicle toward a brick house on Lucian Street. Walton called for backup, and other officers, including Gipson, blocked off the road ahead of Walton and corralled the white SUV toward the road block, ending the car chase.

Walton took the driver out of the vehicle, at which point a "little white rock" fell from the driver's lap and Walton noticed "a bunch of white residue around [the driver's] mouth . . . and []foaming at the mouth." The driver did not have a driver's license, but told Walton his name, Gerald Barber. There was also a passenger in the car, Robert Hosea, who cooperated with the police. Walton drove to the Washington Street site where he first observed the "throwing motion," but was unable to find the item thrown out of the window. Gipson took Hosea to the site of the second "throwing motion" on Lucian Street. Walton went to Lucian Street to meet Gipson, at which point he "saw a black bag in front of [the house] and [he] took some pictures of it while it was on the ground." Inside the bag,

4

Walton saw 16 clear plastic bags with "an off-white substance inside" each. Walton also searched the white SUV and found measuring jars, a mixer, and digital scales, all with off-white residue.

On cross examination, Walton testified that Gipson searched Hosea and, because Hosea was cooperating, he was not arrested. Walton also confirmed that Gipson and Hosea had arrived on Lucian Street first, and when asked if "they were pointing to you about where they saw some[thing,] correct?" Walton responded that "[Gipson] was [and] Hosea was still in the car." Walton responded affirmatively when asked, "you wrote your report collectively with what Gipson told you?" Walton then testified that Hosea did not leave the car while at Lucian Street. When asked, "you relied on Gipson's statements to you that 'we found this right here,' correct?" Walton replied, "[y]eah, Mr. Hosea pointed out."

Barber stated "[a]nd you know that's a problem with Gipson; correct?" The Government objected, and the district court sustained the objection. Barber then made a motion to be able to cross-examine Walton "about the fact that Gipson has been convicted of perjury in the past," because Barber argued that he had formed the foundation that Walton "relied on statements given by Gipson." The district court denied the motion, and Walton was dismissed after redirect.

Next, Hosea testified. On the date of the incident, Hosea was walking when Barber stopped and offered him a ride. Hosea got into the passenger side and they

5

drove off.  After some time, a man that Hosea knew to be a cocaine user flagged them down and Barber and the man began having a conversation.  Hosea saw Barber with a black bag on his lap that he was preparing to give to the man, but then Walton arrived and turned on his lights.  Barber fled the scene over Hosea's protests and Barber stated, "I can't stop, man.  I can't stop.  I'm going to prison for a long time.  I can't stop."  Hosea observed Barber throw the black bag out of the window while passing a house on Lucian Street and saw Barber put a white substance from the bag into his mouth.  When the chase ended, Hosea agreed to cooperate and show the officers where he saw Barber throw the bag.  Hosea returned to Lucian Street with Gipson where he saw the black bag.  On cross-examination, Hosea testified that, when he went with Gipson to Lucian Street, he exited the car with him to look for the black bag.  Hosea stated that Walton arrived just a minute and a half after he and Gipson arrived.  Hosea denied owning the black bag or the drug paraphernalia and denied putting the drugs in the yard.

At the start of the next day of trial, Barber proffered that he should be allowed to present Gipson's perjury conviction to the jury under Federal Rule of Evidence 607 because it was "critical to this case, given Chief Walton's testimony that he relied on Gipson's account as to who found the drugs and where the drugs were."  The court, confused, questioned, "[w]ait.  So you are not making a proffer to put Mr. Gipson on; you are making a proffer that you should be able to impeach

6

Mr. Gipson by calling Mr. Walton again?"  Barber confirmed that he would "[n]ot necessarily impeach Gipson" with this evidence, but that he wanted to show that Walton knew about the conviction and the possible credibility issue.  The court stated that Barber would have the right to call Gipson in light of the inconsistent testimony between Hosea and Walton regarding whether Hosea had left the car at Lucian Street and because Walton testified that "he relied on [Gipson's] version for his determination of things."  Otherwise, the court stated that Barber could not impeach Gipson through Walton.  Barber argued that he wanted to question Walton's credibility because he relied on Gipson, who was an unreliable source. The court requested case law to support Barber's argument, and Barber admitted that, "in looking at the research that I was able to do, I don't have any case law.  I don't have any case law on point, exactly on point, with this case."  The court asked if Barber was going to call Gipson, and Barber stated that he had yet to decide.

After the Government rested, the defense did not call Gipson or any witnesses.  The jury found Barber guilty of both Counts 1 and  2 and the district court sentenced him to 120 months' imprisonment.

## II.  DISCUSSION

### A.  *Rule 806*

Barber argues the district court denied him "the opportunity to expose Gipson's perjury as bearing on his credibility."  Barber argues that Gipson's credibility entered the case through Walton's testimony that Gipson directed him to where the black drug bag was located such that it became "critical to the defense that the jury learn of his perjury."  Barber argues this reliance amounted to hearsay on Gipson's part such that Gipson's character was subject to attack under Federal Rule of Evidence 806.  Specifically, Barber argues that "[w]hen Walton testified that Gipson directed him to the drug bag, Walton was relat[ing] Gipson's out-of-court assertion which was offered for the truth that 'we found this [drug bag] right here.'"  Barber contends this was a hearsay statement that subjected Gipson to attack under Rule 806 because Gipson was effectively a witness and, had Gipson testified at trial, his perjury conviction would have been admissible pursuant to Rule 608(b) and 609(a)(2) as a "powerful impeachment" attack on his credibility.

As an initial matter, while Barber argued in his response to the Government's motion *in limine* that a prohibition on referring to Gipson's conviction would violate his Fifth and Sixth Amendment rights because Gipson's credibility was a "central issue[] in the trial of this case," and he argued during the trial that he should be allowed to examine Walton regarding Gipson's credibility

8

pursuant to Federal Rule of Evidence 607, he never made the argument that Gipson's credibility could be attacked through Walton's testimony pursuant to Rule 806. In fact, when the district court asked for law to support Barber's impeachment of Gipson through the testimony of Walton, Barber responded that "in looking at the research that I was able to do, I don't have any case law. I don't have any case law on point, exactly on point, with this case."

"While we normally review evidentiary rulings for abuse of discretion, arguments raised for the first time on appeal are reviewed for plain error." *United States v. Carthen*, 906 F.3d 1315, 1320 (11th Cir. 2018). Under plain error review, we may not correct an error not raised at trial unless there is "(1) error, (2) that is plain and (3) that affects substantial rights." *United States v. Turner,* 474 F.3d 1265, 1276 (11th Cir. 2007). Even if all three conditions are met, we may exercise our discretion only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Rule 806 states that, "[w]hen a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806. Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person,

9

if it is intended by the person as an assertion. Fed. R. Evid. 801(a). The test for Rule 806 "is whether the out-of-court statements would have been admissible for impeachment purposes had the [declarant's] statements been delivered from the witness stand by the [declarant] . . . as contemporaneous in-court statements." *United States v. Grant*, 256 F.3d 1146, 1154 (11th Cir. 2001).

Even assuming, without deciding, that Barber were able to show error that is plain in failing to allow cross-examination of Walton regarding Gipson's credibility using Rule 806, Barber cannot show that his substantial rights were affected. Importantly, Barber refused to call Gipson as a witness when the district court gave him the opportunity. The district court even suggested a reason to call Gipson as a witness, and Barber declined to do so. There is no record evidence of Gipson being unavailable, and Barber need not have made this argument on appeal had he brought Gipson as a witness and put his conviction into evidence under Federal Rules of Evidence 607 and 609. Thus, any argument his substantial rights were affected is undermined by his trial decision to avoid calling Gipson. Likewise, Barber's failure to call Gipson as a witness makes him unable to show any potential error affected the fairness, integrity, or public reputation of judicial proceedings. Barber has not met the requirements of plain error, and we affirm as to this argument.

*B. Confrontation Clause*

10

Barber also contends the Government "sought to shield Gipson's credibility from scrutiny" by not calling him as a witness, even in the face of conflicting testimony between Walton and Hosea regarding whether Hosea had left the patrol car to look for the bag with Gipson. Barber argues that resolving this discrepancy was "critical to the defense" because his theory was that the drugs and drug paraphernalia belonged to Hosea. He asserts the court violated his Sixth Amendment right to recall Walton and cross-examine him regarding his reliance on Gipson's hearsay. He contends that, for the jury to have adequately assessed Walton's credibility, they "needed to know if Walton was aware of Gipson's perjury conviction."

The Court reviews de novo whether a defendant's Sixth Amendment rights were violated. *United States v. Ignasiak*, 667 F.3d 1217, 1227 (11th Cir. 2012). "The denial of a defendant's Confrontation Clause right to cross-examination is examined for harmless error." *United States v. Ndiaye*, 434 F.3d 1270, 1286 (11th Cir. 2006).

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." U.S. Const. Amend. VI. It guarantees criminal defendants an opportunity to impeach, through cross-examination, the testimony of witnesses for the prosecution. *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1366 (11th Cir.

11

1994).  However, the accused is "entitled only to an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id*. (quotations omitted).  District court judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about," among other things, confusion of the issues or interrogation that is "only marginally relevant." *Id*. (quotations omitted).  "Once there is sufficient cross-examination to satisfy the Sixth Amendment's Confrontation Clause, further questioning is within the district court's discretion." *United States v. Garcia*, 13 F.3d 1464, 1468 (11th Cir. 1994).  We look to "whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." *Id*. at 1469.

To the extent Barber argues the Government "sought to shield Gipson's credibility from scrutiny" by not calling him as a witness, even in the face of conflicting testimony, that argument fails.  The district court specifically asked Barber if he wanted to call Gipson as a witness because it believed that he "would have a right to call [Gipson] because you have had inconsistent testimony . . . and also, the fact that now [Walton] has said he relied on [Gipson's] version for his determination of things."  Barber had the opportunity to call Gipson, but chose not to.  A strategic choice is grounds to affirm a district court's prohibition on bringing

12

certain evidence regarding a non-witness.  *See United States v. Maxwell*, 579 F.3d 1282, 1298 (11th Cir. 2009) (holding constitutional a court's prohibition on cross-examining a witness on an issue the defendant himself could have presented as "evidence in his own case" by calling a separate witness, but instead, the defendant made "the tactical decision not to call [the non-witness] as his own witness").

As to Barber's argument the court violated his Sixth Amendment right to recall Walton to cross-examine him, Barber's right to cross-examine Walton was not unlimited, and he was "entitled only to an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Baptista-Rodriguez*, 17 F.3d at 1366 (quotations omitted).  The district court had "wide latitude" to impose a reasonable restriction on cross-examining Walton to prevent the "confusion of the issues" or interrogation that was "only marginally relevant." *Id.*  The presentation of a 12-year old prior conviction of a non-testifying witness could confuse the issue for the jury. *Id.*  Indeed, the district court itself appeared confused by such a request from Barber, stating, "[w]ait.  So you are not making a proffer to put Mr. Gipson on; you are making a proffer that you should be able to impeach Mr. Gipson by calling Mr. Walton again?"  Further, unlike in *Baptista-Rodriguez*, Gipson's conviction did not touch upon a "central factual issue of the case" such that, by presenting the evidence, Barber had a "persuasive argument" in his favor. *Id.* at 1366-67.

13

Barber's argument that Gipson's conviction was "critical to the defense" because his theory was that the drugs and drug paraphernalia belonged to Hosea is unavailing. There was sufficient evidence from Barber's cross-examination of both Walton and Hosea to support Barber's strongest defense—that the drugs had belonged to Hosea—yet, the jury nevertheless found against him. The Government presented Hosea's testimony that he observed Barber throw the black bag from the truck and admit that, "I can't stop. I'm going to prison for a long time. I can't stop." Also, Walton testified that he personally saw the black bag in the same location where he saw Barber throw an item from his truck during the chase.

Thus, the introduction of the conviction could have confused the jury and there was other convincing evidence in the record supporting Walton's testimony such that the conviction was not an "especially important area[] of inquiry" for Barber's defense. *Baptista-Rodriguez*, 17 F.3d at 1366. Barber chose not to call Gipson, he had his opportunity to cross-examine Walton and Hosea regarding the key component of his defense, and the district court had discretion to limit that cross-examination. *Garcia*, 13 F.3d at 1468.

Thus, we also affirm the district court as to this argument. Barber's convictions are **AFFIRMED**.

14